action, and (3) a causal link exists between a protected activity and the adverse action.  *Id.* at 822.  ADP has the burden to articulate a legitimate, nondiscriminatory reason for its action if Majewski successfully establishes a prima facie case.  *Id.*  If ADP does so, then the burden shifts back to Majewski to show that ADP's articulated reason was a pretext to mask its true retaliatory intent.  *Id.*

Majewski cannot establish that he engaged in a protected activity because his August 6, 1998 letter to the ADP corporate office does not address the issue of age discrimination.  Instead, the letter and its attached pages attempt to defend Majewski's poor performance and criticize Kudej's supervision.  The letter itself says nothing about age discrimination.  On page six of the nine-page attachment, there is a single sentence that reads:  "I was not doing anything different than my co-workers and I felt like they were trying to fire me before I was forty."

This isolated statement in the attachment does not concern recent conduct, however, because Majewski was 44 years old at the time of the letter, nor does it transform the letter into a protected complaint concerning age discrimination.  In the attachment, Majewski also asserted that the entire department under Kudej's supervision, which included people both over and under the age of forty, felt discriminated against by Kudej.  But because the alleged discrimination was not based on age, the August letter cannot reasonably be read as a complaint by Majewski about age discrimination under Ohio Revised Code § 4112.02.  We therefore conclude that Majewski failed to establish a prima facie case of retaliatory discharge.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

---

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0435P (6th Cir.)
File Name:  01a0435p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

RONALD C. MAJEWSKI,
           *Plaintiff-Appellant,*

                v.                                    No. 00-4071

AUTOMATIC DATA
PROCESSING, INC.,
           *Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No.  99-00978—Patricia A. Gaughan, District Judge.

Submitted:  October 23, 2001

Decided and Filed:  December 21, 2001

Before:  BOGGS and GILMAN, Circuit Judges; QUIST,
District Judge.

---

[*] The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

―――――――――――

**COUNSEL**

**ON BRIEF:** Michael Terrence Conway, MICHAEL TERRENCE CONWAY COMPANY, Brunswick, Ohio, for Appellant.  W. Eric Baisden, JONES, DAY, REAVIS & POGUE, Cleveland, Ohio, for Appellees.

**――――――――――**

**OPINION**

**――――――――――**

RONALD LEE GILMAN, Circuit Judge.  In September of 1998, Ronald Majewski was fired from his job as a computer operator.  Majewski brought suit against his former employer, Automated Data Processing, Inc. (ADP), alleging that his discharge improperly interfered with his retirement benefits, constituted age discrimination, and amounted to unlawful retaliation.  After ADP moved for summary judgment, Majewski requested an extension of the discovery deadline, which the district court denied.  Following the district court's grant of summary judgment in favor of ADP, Majewski appealed the dismissal of his retirement benefits, age discrimination, and retaliatory discharge claims, as well as the denial of his motion to extend discovery for a second time.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

**I. BACKGROUND**

**A.    Factual background**

Majewski began working at ADP's Cleveland, Ohio office in 1973.  He joined the computer operations department in 1979, where he worked until his discharge in September of 1998.  At the time of his discharge, Majewski was 44 years old.

an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect.  *Id.* at 806.  An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied "on the particularized facts that were before it at the time the decision was made."  *Id.* at 807.

The evidence in this case supports ADP's claim that it honestly believed in its proffered nondiscriminatory reason for discharging Majewski.  ADP documented Majewski's declining performance over a period of years and invested time in implementing a plan to help Majewski to improve. Lapses in Majewski's performance were verified, and his relationship with his supervisor, Kudej, was investigated to ensure that Majewski was being evaluated fairly.  Kudej checked into the payroll wrap incident with particular care and reached his conclusion regarding its cause on the basis of specific evidence.  Majewski's assertion that he did not delete the payroll wrap is insufficient to call into question ADP's honest belief that he did.  Accordingly, we conclude that Majewski has not met his burden of raising a genuine issue of material fact as to whether ADP's reason for discharging him was pretextual.

**F.    The district court correctly dismissed Majewski's retaliatory discharge claim**

Majewski's final claim is for retaliatory discharge.  This claim is brought under Ohio Revised Code § 4112.02(I), which provides that it is unlawful "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice . . . ."  In analyzing retaliatory discharge claims, the Ohio courts rely on federal caselaw.  *Peterson v. Buckeye Steel Casings*, 729 N.E.2d 813, 821-22 (Ohio Ct. App. 1999). Majewski can establish a prima facie case of retaliatory discharge by showing that (1) he engaged in a protected activity, (2) he was subjected to an adverse employment

ADP. *Ercegovich*, 154 F.3d at 352 (internal quotation marks omitted) (quoting *Mitchell*, 964 F.2d at 583, and stating that "these factors generally are all relevant considerations in cases alleging differential disciplinary action"). The evidence is simply not sufficient to permit a reasonable jury to conclude that Majewski was treated differently than "similarly situated" employees younger than 40 years old.

Even if we were to assume that Majewski established a prima facie case under the *McDonnell Douglas* framework, ADP could rebut the presumption of impermissible action by introducing evidence of a legitimate, nondiscriminatory reason for Majewski's discharge. *McDonnell Douglas*, 411 U.S. at 802. ADP articulated such a reason; namely, Majewski's increasingly poor job performance as described in Part I.A. above. The burden thus shifted back to Majewski to show that a genuine issue of material fact existed as to whether ADP's reason was in reality a pretext to mask discrimination. *Id.* at 804-05.

Based on the Supreme Court's recent decision in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), Majewski can meet his burden of showing pretext by producing evidence that ADP's proffered reason for his discharge was false. *Id.* at 147. Majewski contends that ADP's reason for his discharge was false because his job performance was in fact satisfactory. But even if all of Majewski's assertions about his performance were true—i.e., that the errors he committed were minor, and that he did not delete the payroll wrap—Majewski's disagreement with ADP's honest business judgment regarding his work does not create sufficient evidence of pretext in the face of the substantial evidence that ADP had a reasonable basis to be dissatisfied.

This court has adopted an "honest belief" rule with regard to an employer's proffered reason for discharging an employee. *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998). Under this rule, as long as an employer has

ADP processes and produces payroll information for employers. Majewski was a "senior computer operator," responsible for entering data and monitoring the printers. From 1992 until his discharge, Majewski was supervised by Gary Kudej and, before Kudej, by Gene Egglebrecht. Both Egglebrecht and Kudej noted deficiencies in Majewski's job performance. Kudej observed a steady decline in the quality of Majewski's work beginning in 1992. In the performance evaluations for the years 1996 and 1997, Kudej concluded that Majewski's performance "needs improvement."

Approximately two weeks after Majewski signed his 1997 performance evaluation without comment, he sent a letter to the ADP corporate office in New Jersey criticizing Kudej's supervision and saying that Kudej was singling him out for making mistakes that other computer operators had made without receiving discipline. The letter was written on a single page, with nine pages of attachments. In the letter, Majewski both defended his job performance and criticized Kudej. The only indication that Majewski thought that his treatment was related to his age is found on page six of the attachments, where he stated that "I was not doing anything different than my co-workers and I felt like they were trying to fire me before I was forty." Majewski also asserted that the entire department under Kudej's supervision, which included people both over and under the age of forty, felt discriminated against.

The letter was forwarded to Caro Nickel, the Human Resources Director at ADP's Cleveland office, who discussed Majewski's concerns with William Balzer, the Vice President of Operations, and John Sciano, the General Manager of the Cleveland office. According to Nickel, Kudej was never informed of Majewski's criticisms and never read the letter.

Sciano and Balzer assigned Nickel to investigate Majewski's allegations. Nickel interviewed and discussed the allegations with other employees in the computer operations department. The employees who spoke to Nickel

said that Majewski was committing errors and causing problems in the department as a result of his attitude and work habits. Through her investigation, Nickel also discovered that Majewski had asked others in the department, including employees who were under 40 years of age, to sign his letter addressed to ADP's corporate office. Although the employees who spoke to Nickel expressed dissatisfaction with Kudej, none of them thought that Kudej was unfairly singling out Majewski, and none of them signed the letter. One of the computer operators whom Nickel interviewed, Ron Jackson, was himself 49 years old at the time.

After Nickel finished her investigation, she delivered her findings to Balzer and Sciano. Nickel reported that her interviews with the other computer operations employees did not confirm Majewski's allegations of unfair treatment by Kudej. Additionally, through her review of Majewski's personnel file and Kudej's written comments, Nickel concluded that Majewski was making repeated errors and that Kudej was correct in encouraging Majewski to improve his performance.

Sciano and Balzer met with Majewski in January of 1998 to discuss Majewski's complaint and the results of Nickel's investigation. Because Kudej was unaware of Majewski's letter, Sciano instructed Majewski to meet with Kudej about his concerns and to report to Sciano concerning their discussion. Majewski, however, never met with Kudej. Approximately three weeks later, Sciano and Balzer again met with Majewski, this time with Nickel and Kudej present. Kudej had still not been told of Majewski's letter. When Sciano asked Majewski why he had not met with Kudej, Majewski did not respond. Sciano then expressed his displeasure with Majewski's failure to meet with Kudej and told Majewski that he would have to improve his performance and reduce the number of repeated errors in order to avoid further disciplinary action.

discriminatory treatment," can establish the fourth element of a prima facie case by demonstrating that "comparable, non-protected persons were treated more favorably."

Majewski could have met this test by demonstrating that he was "similarly situated" to employees who were not in the protected class, and that those employees were treated better than he was. *Id.* This court has held that employees must be treated similarly if they are "similarly situated in all respects." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992) ("[T]he individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."). In the more recent case of *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998), this court explained that the *Mitchell* decision meant that the plaintiff must "demonstrate that he or she is similarly situated to the non-protected employee in all *relevant* respects." (emphasis in original).

In order to show disparate treatment under *Myers*, Majewski notes that Gary Kudej, his supervisor, admitted that "other ADP employees caused computer delays . . . and were not terminated." Majewski, however, produced no evidence showing that these employees were similarly situated with respect to the severity and frequency of their performance errors. He also submitted no evidence that the younger employees continued to commit errors even after being counseled to improve, as he was, by supervisors and through performance reviews. Majewski does, however, point to Kudej's testimony that another (presumably younger) employee, Tina Becker, was not fired despite having received "a worse employee evaluation than Ron Majewski." But Kudej's statement about Becker does not show that Majewski and Becker "were subject to the same standards and [] engaged in the same conduct without differentiating or mitigating circumstances" justifying different conduct by

Majewski satisfied each of the first three requirements for a prima facie case. He is a member of a protected class because he was over 40 years old, he was admittedly discharged, and he was qualified for the position in which he had worked with varying degrees of success for many years. Majewski did not, however, satisfy the fourth requirement of a prima facie case—that he was replaced by, or that his discharge permitted the retention of, a similarly situated younger worker.

Majewski was not replaced. Instead, his duties were spread among the remaining employees in the computer operations department. "Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement." *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992). The only person who arguably replaced Majewski was Gerald Katcher, a 60-year-old part-time employee who was transferred into the computer operations department approximately six weeks after Majewski's discharge. Because Katcher was 16 years older than Majewski, his transfer does not advance Majewski's age discrimination case.

As to whether Majewski's discharge permitted the retention of a younger worker, Majewski stresses the fact that most of the employees who remained in the computer operations department after his discharge were under 40 years old. Majewski, however, produced no evidence to suggest that the employment status of these younger workers would have changed even if Majewski had not been discharged.

Alternatively, Majewski argues that he satisfied the fourth element of his prima facie case because younger employees were retained despite the fact that they had also committed performance errors. In *Myers v. Goodwill Industries of Akron, Inc.*, 701 N.E.2d 738, 743 (Ohio Ct. App. 1997), the Ohio Court of Appeals held that a plaintiff who "does not allege discriminatory discharge or failure to rehire, as such," but instead "alleges that harassment, discharge, and failure to rehire constitutes a series of facts that amount[ed] to

Majewski, however, continued to make numerous errors during the next six weeks. According to ADP, these errors were of the same type as those documented in his 1996 and 1997 performance evaluations. They included deleting payroll information for a number of employers and incorrectly "running" payroll information, leading to delays in printing. Kudej investigated and documented these errors.

Majewski next met with Balzer and Kudej in March of 1998 to discuss the implementation of a performance improvement plan. The plan summarized Majewski's unsatisfactory job performance, noted the areas in which Majewski was instructed to avoid making further errors, and placed him on probation for at least 90 days. If his performance did not improve significantly, according to the plan, he faced disciplinary action up to and including discharge. Majewski refused to sign the performance improvement plan, contending that the evaluation of his poor performance was baseless.

According to Kudej, Majewski's poor attitude and deficient work performance continued after the March meeting. Kudej said that Majewski continued to make errors, such as delaying jobs, printing jobs on the wrong paper, and incorrectly filling out various log sheets. In August of 1998, according to Kudej, Majewski deleted an entire "payroll wrap." A payroll wrap is the output report for a batch of payrolls that have been processed. These reports are on a disk until the operator is ready to print them. Once deleted, the output report cannot be recovered. Kudej stated that this error by Majewski caused hours of additional work for other employees and resulted in the need to recreate payroll data for numerous customers. No other computer operator during Kudej's tenure had ever made this error, and Kudej was of the opinion that the deletion "could not be accidental because of the way information had to be inputted on the computer console." Majewski was discharged soon afterward.

During Majewski's employment at ADP, he participated in the company's 401(k) plan and its stock purchase plan. These plans both contain payout provisions upon the termination of employment. Under the 401(k) plan, Majewski was permitted to remain a plan participant after his discharge, but he could no longer make contributions. The stock purchase plan allowed Majewski to receive reimbursement after his discharge for the money he had already contributed, but because he was discharged before he had participated in the plan for two years, he was not eligible to purchase discounted stock that would otherwise have been available to him. Upon Majewski's discharge, ADP paid him all of his accrued benefits that were due under these two plans. Majewski admitted that he is unaware of any termination benefit that ADP has denied him.

After Majewski's discharge, his job duties were reallocated among the remaining computer operators. Approximately six weeks later, another ADP employee, Jerry Katcher, transferred into the computer operations department because of the elimination of Katcher's department. Katcher, unlike Majewski, was a part-time employee. At the time Katcher transferred into computer operations, he was 60 years old. Katcher performed a number of Majewski's tasks, including loading and unloading the printers, but he never operated a computer console as Majewski had done.

## B.   Procedural background

Majewski filed this action in the Cuyahoga County Court of Common Pleas on March 22, 1999. In his complaint, Majewski alleged that ADP (1) discharged him in order to interfere with his attainment of retirement benefits, in violation of § 510 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1140, (2) discriminated against him because of his age, in violation of Ohio Revised Code §§ 4112.02 and 4112.99, and (3) retaliated against him for opposing ADP's allegedly discriminatory practices, in violation of Ohio Revised Code § 4112.02. ADP, a New

pursuant to Rule 56(f)] do so in good faith by affirmatively demonstrating . . . how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *See also Willmar Poultry Co. v. Morton-Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir. 1975) ("Rule 56(f) is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious."). We therefore conclude that the district court did not abuse its discretion in denying Majewski's motion to extend discovery for a second time.

## E.   The district court did not err in dismissing Majewski's age discrimination claim

Majewski brought his age discrimination claim pursuant to Ohio Revised Code § 4112.02(N), which provides that "[a]n aggrieved individual may enforce the individual's rights relative to discrimination on the basis of age as provided for in this section by instituting a civil action. . . ." Ohio courts examine state employment discrimination claims in accordance with federal caselaw interpreting Title VII. *Bucher v. Sibcy Cline, Inc.*, 738 N.E.2d 435, 442 (Ohio Ct. App. 2000). If the employee lacks direct evidence of discrimination, then Title VII caselaw provides a burden-shifting regime that begins with the employee having to establish a prima facie case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In order to establish a prima facie case for his age-based claim of wrongful discharge, Majewski must establish "(1) that he was a member of the statutorily protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or his discharge permitted the retention of, a person who did not belong to the protected class." *Barker v. Scovill, Inc.*, 451 N.E.2d. 807, 809 (Ohio 1983) (citing *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69 (6th Cir. 1982)).

however, has produced no evidence that would permit a reasonable inference that ADP was motivated to discharge him in order to prevent him from attaining further entitlements to retirement benefits. Because of this lack of evidence, we conclude that Majewski failed to establish a prima facie case under § 510.

**D.  The district court did not abuse its discretion in denying Majewski's motion to extend discovery for a second time**

In an apparent acknowledgment that his ERISA claim is weak, Majewski devotes the ERISA portion of his appellate brief to the argument that the district court abused its discretion in denying his second request to extend discovery. We will find an abuse of discretion only upon a "definite and firm conviction that the trial court committed a clear error of judgment." *Cincinnati Ins. Co. v. Byers*, 151 F.3d 574, 578 (6th Cir. 1998) (citation and quotation marks omitted).

The district court granted Majewski's request to review ADP's budgeting and staffing records, even though the request was made five months after the discovery deadline had passed. Although ADP produced the documents, Majewski found them "undecipherable." After ADP filed its motion for summary judgment, Majewski once again asked the district court to extend discovery for the same purpose, but the court declined to do so.

The district court did not abuse its discretion in denying Majewski's motion to extend discovery because Majewski provided no support for his assertion that additional discovery was likely to produce relevant evidence in support of his ERISA claim. Where the full period for pretrial discovery has run its course, a party should generally be precluded from reopening discovery months after it has closed in a last-ditch attempt to salvage a deficient claim or defense. *See Good v. Ohio Edison Co.*, 149 F.3d 413, 422 (6th Cir. 1998) ("This court requires 'a party [requesting additional discovery

Jersey corporation, removed the action to federal court based upon both diversity of citizenship and the presence of a federal question.

Five months after the discovery deadline, Majewski requested additional discovery relating to ADP's budget. The district court granted Majewski's request. Majewski, however, did not find any useful information in the documents produced by ADP. After ADP had filed its motion for summary judgment, Majewski requested that discovery be extended for a second time. Because Majewski provided no reason to believe that such discovery would produce any relevant evidence, the district court denied this second request. The district court subsequently granted summary judgment in favor of ADP. Majewski now appeals the dismissal of his ERISA, age discrimination, and retaliatory discharge claims, as well as the denial of his second request to extend the discovery deadline.

## II.  ANALYSIS

**A.  Standard of review**

We review de novo the district court's grant of summary judgment. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists only where there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### B.   The district court erred in its application of ERISA § 510

Majewski's retirement benefits claim is based upon § 510 of ERISA, 29 U.S.C. § 1140, which provides that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit plan]." Section 510 was designed to prevent "unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *West v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980).

Because § 510 protects an employee's right to attain *future* entitlements to retirement benefits free from intentional interference by his employer, the district court improperly based its dismissal on the fact that Majewski received every *accrued* benefit to which he was entitled. The right to accrued benefits, however, is not the issue in Majewski's claim under § 510. Instead, the issue is whether ADP discharged Majewski with the intent to prevent him "from obtaining vested pension rights," *West*, 621 F.2d at 245, beyond those that he had already attained. *Walsh v. United Parcel Service*, 201 F.3d 718, 728 (6th Cir. 2000) (holding that in order to establish a prima facie case under § 510, the plaintiff must show that the employer interfered with "the attainment of any right to which the employee may become entitled") (citation omitted). Majewski's admission that he cannot identify any accrued benefit that he has not been paid, therefore, does not affect his claim under § 510.

### C.   Although the district court's reasoning was in error, it reached the correct result in concluding that Majewski failed to establish a prima facie case under ERISA § 510

Majewski's discharge caused him to lose the opportunity to accrue additional benefits by precluding him from contributing further to his 401(k) plan and receiving discounted stock. In order for Majewski to establish a prima facie case under ERISA § 510, however, he must demonstrate not only that he lost the opportunity to accrue new benefits, but also that ADP had the specific intent of avoiding ERISA liability when it discharged him. *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997). Otherwise, every employee discharged by a company with an ERISA plan would have a claim under § 510.

This court in *Smith* set forth the framework for analyzing a claim under § 510, which requires a showing that the employer "had a specific intent to violate ERISA." *Id.* Because Majewski has produced no direct evidence of specific intent, he must instead establish an indirect prima facie case of discrimination "by showing the existence of (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Id.* (internal quotation marks and citation omitted). Majewski must also "come forward with evidence from which a reasonable jury could find that the defendant's desire to avoid [retirement benefit] liability was a determining factor in plaintiff's discharge." *Id.* (citation omitted).

A plaintiff's burden in establishing a prima facie case is not intended to be an onerous one. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 870 (6th Cir. 2001) (stating, in the context of a § 1981 racial discrimination case, that the plaintiff's burden of establishing a prima facie case of discrimination is not intended to be onerous, citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Majewski,