**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0021n.06**
**Filed: January 9, 2006**

**No. 05-5060**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| TIMOTHY F. MORTON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| UNITED PARCEL SERVICE, INC., | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| Appellee. | ) | |

Before: DAUGHTREY, GILMAN and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Timothy Morton appeals the entry of summary judgment against him in this employment-discrimination case. Because he has not produced evidence that would allow a reasonable jury to conclude that the nondiscriminatory reason offered by United Parcel Service, Inc. (UPS) for his discharge was pretextual, we affirm.

I.

In 1994, Morton began driving a UPS "package car" (the company's phrase for its ubiquitous brown van) in Nashville, Tennessee. On September 14, 2000, he was running behind on his deliveries. Using an electronic scanner, he marked a next-day-air package as being delivered at 10:22 a.m., which created the impression that he had delivered the package before the 10:30 a.m.

deadline rather than at 11:35 a.m., when he in fact delivered the package. Because the package arrived after the 10:30 a.m. deadline, the customer sought a refund, which alerted UPS to Morton's inaccurate scanning of the delivery.

On October 2, a group of UPS managers met with Morton and a union steward to discuss the delivery. The parties offer competing versions of what happened at the meeting. UPS claims that Morton admitted he intended to conceal the late delivery, while Morton claims that he said the false scanning was inadvertent. And UPS claims that Morton was discharged after the meeting and reinstated two days later at the request of the union, while Morton claims that he was never discharged but was given a five-day suspension.

On July 26, 2001, a similar incident occurred. Running late, Morton scanned a next-day-air package before delivery (and before the delivery deadline) and did not rescan the package after the late delivery. Another disciplinary meeting was held. At this meeting, the parties agree that Morton acknowledged intentionally concealing the late delivery and that the meeting ended with UPS discharging Morton for dishonesty. Morton filed a grievance requesting reinstatement but UPS refused to reinstate him. On October 19, a panel made up of an equal number of managers and union officials upheld the discharge decision.

Nearly a year later, after learning that UPS had reinstated two white employees following discharges for dishonest acts, Morton, who is African-American, filed a discrimination charge against UPS with the Equal Employment Opportunity Commission on September 9, 2002. After

receiving a right-to-sue notice, Morton filed a complaint (on August 18, 2003) alleging race discrimination under Title VII and 42 U.S.C. § 1981. While Morton eventually dropped the Title VII claim, he premised his § 1981 claim on the ground that UPS did not reinstate him following his discharge for dishonest acts but reinstated two white employees following their discharges for dishonest acts.

On November 11, 2004, the district court granted UPS's motion for summary judgment. While the court recognized that Morton had established a prima facie case of discrimination, it concluded that UPS had offered a nondiscriminatory reason for its refusal not to reinstate Morton—namely, that Morton had committed two acts of dishonesty while the two white employees had committed one act of dishonesty each.

Nor, the court added, had Morton shown that UPS's proffered reason was pretextual. "[T]he record before" it, the court concluded, "clearly show[ed] that Plaintiff was discharged from his employment . . . on October 6, 2000 for an act of dishonesty involving the September 14, 2000 incident." D. Ct. Op. at 7. Responding to Morton's assertion that under the collective bargaining agreement the first offense (September 14, 2000) was too stale to be considered by UPS in disciplining him for the second offense (July 26, 2001), the court reasoned that the agreement provides that acts of dishonesty are never "wiped clean" from the driver's record. *Id*. at 8. Finally, the court concluded that the record did not support Morton's argument that UPS failed to rely on the first offense when refusing to reinstate him following the second incident. Invoking the "honest belief" doctrine, *see Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106 (6th Cir. 2001),

the court held that Morton's "2000 discharge for dishonesty was a factor in [UPS's] decision not to reinstate [him]." D. Ct. Op. at 8–9. Morton filed this appeal, which we review de novo. *Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir. 2003).

II.

Judge Campbell's thorough summary-judgment opinion leaves an appellate court with little room for elaboration save to make the following brief responses to Morton's primary arguments on appeal. First, in questioning UPS's honest-belief defense, Morton faces an uphill battle on this record. Under *Majewski*, "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." 274 F.3d at 1117. Consistent with *Majewski*, UPS has pointed to numerous "particularized facts that were before it at the time the decision was made" and that could legitimately support its stated reason for discharging Morton—namely, that Morton's July 26 false scanning was the second time that the company had disciplined him for an act of dishonesty. *Id.* Morton's employment file contained a letter, dated October 6, 2000, and affixed with a certified mail receipt bearing the same date, saying that "[o]n October 2, 2000 a meeting was held to discuss your acts of dishonesty on September 14, 2000. . . . This is official notification of your discharge from United Parcel Service, effective October 2, 2000 for acts of dishonesty." JA 118. The employment file contained a disciplinary-action input form that categorized the first incident as "Violation Type DIS – Dishonesty." JA 121. And during his deposition, Lanier Hatchell, a UPS manager, indicated that the company based reinstatement

decisions on whether "we had [ ] knowledge of any previous discharges for acts of dishonesty." JA 170.

To make "a submissible case on the credibility of [UPS's] explanation," Morton must show "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (internal quotation marks and emphasis omitted). Because a jury "may not reject an employer's explanation [ ] unless there is a sufficient basis *in the evidence* for doing so," *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 724 (6th Cir. 2004) (internal quotation marks omitted), Morton must produce evidence from which a reasonable jury could find pretext in order to overcome UPS's motion for summary judgment. (The same burden-shifting framework and pretext analysis that govern Title VII claims also govern § 1981 claims. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)).

Morton has not met this burden. He points out that the record does not contain a signed return receipt indicating that he received the October 6, 2000 discharge letter. But even if we assume for the sake of argument that Morton did not receive the letter, that fact does not meaningfully challenge the record-based conclusion that UPS believed that the October 6 incident involved an act of dishonesty. He next argues that UPS handled the first and second discharges differently, noting that he was never forced to hand in his identification badge following the first incident. But even if Morton could create a fact dispute about whether he was discharged over the first incident, the salient point is that the undisputed evidence shows that UPS did not rehire Morton

after the July 26 incident not because Morton had been discharged before but because he had engaged in an act of dishonesty before.

Morton also contends that the collective bargaining agreement "precluded" UPS "from considering prior disciplinary action after nine months had lapsed," proving that the 2000 incident could not have "motivate[d] UPS'[s] decision" not to reinstate him. Morton Br. at 18. Not true. By their terms, these provisions of the collective bargaining agreement do not apply to discharges based on "dishonesty." JA 282.

Morton, it is true, could "demonstrate pretext by producing evidence that other employees, . . . not in the protected class, were not fired [or here, reinstated following discharge] even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Braithwaite v. Timken Co.*, 258 F.3d 488, 497 (6th Cir. 2001) (internal quotation marks omitted). But he has not drawn our attention to a white employee who was similarly situated to him but who received better treatment. That UPS reinstated Jacqueline Roy and Steve Morgan, both white employees, after discharging them for dishonest acts does not advance Morton's cause because both employees were being disciplined for first-time offenses. Nor may it fairly be said, as Morton further argues, that Roy was not being disciplined for a first-time offense. While UPS discovered that Roy had committed more than one act of dishonesty (apparently two within a week), it is undisputed that the company discovered the incidents at the same time and disciplined them together. Morton, in comparison, was disciplined once for the September 14, 2000

incident and then again for the July 26, 2001 incident. From the company's vantage point, Morton had received a second chance to learn from his mistake while Roy had not.

Besides attempting to challenge the sincerity of UPS's explanations for discharging him, Morton has offered no other evidence of discrimination—not a single comment by anyone, management or otherwise, even remotely suggesting that race played a part in his discharge. In the final analysis, as the district court properly concluded, Morton has not produced "sufficient evidence to find that the employer's asserted justification is false." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148 (2000). *See id*. at 148–49 (stating that "employer would be entitled to judgment as a matter of law if . . . the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue"); *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 473 (6th Cir. 2002) ("An outcome consistent with *Reeves* is still dependent on [the plaintiff's] *prima facie* case *and* his showing by a preponderance of the evidence that [the defendant's] asserted reason was false.").

III.

For these reasons, we affirm.