NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0813n.06

No. 11-5720

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jul 27, 2012*

LEONARD GREEN, Clerk

LINDA JORDAN,                                )
                                             )
    Plaintiff-Appellant,             )     ON APPEAL FROM THE UNITED
                                             )     STATES DISTRICT COURT FOR
v.                                           )     THE MIDDLE DISTRICT OF
                                             )     TENNESSEE
KOHL'S DEPARTMENT STORES, INC.,              )
                                             )
    Defendant-Appellee.              )     OPINION
                                             )

Before:  **BATCHELDER, Chief Circuit Judge, and KEITH and DONALD, Circuit Judges.**

BERNICE B. DONALD, Circuit Judge.  Plaintiff-Appellant Linda Jordan worked at Defendant-Appellee Kohl's Department Stores, Inc.'s, ("Kohl's") Hendersonville, Tennessee store from October 2003 until her termination on April 1, 2008.  After she was fired, Jordan filed a Title VII claim in federal court, alleging that Kohl's terminated her in retaliation for filing an Equal Employment Opportunity Commission ("EEOC") claim in August 2007.  Kohl's insists that it terminated Jordan based on her pattern of inappropriate conduct toward other employees.  The district court granted summary judgment in favor of Kohl's and Jordan timely appealed.  For the following reasons, we **AFFIRM** the district court's order granting summary judgment in favor of Kohl's.

I.

In October 2003, Jordan began working for Kohl's at its Hendersonville, Tennessee store. Jordan started as a part-time Ad Set Associate, but in 2005, she requested an internship in Kohl's Loss Prevention Department as part of her pursuit of a criminal justice degree. Kohl's created an internship position to accommodate Jordan, and in February 2005, she transferred to Loss Prevention. As a member of the Loss Prevention team, Jordan reported to William Childs, the District Loss Prevention Manager.

On July 26, 2006, Jordan received a performance evaluation from Childs. While the evaluation showed that Jordan's performance met expectations, Childs noted that she needed to develop less abrasive communication techniques and that she needed to better manage her attitude and temper when she became upset. On July 27, 2007, Jordan received another performance evaluation from Childs. Jordan's performance score exceeded expectations, but again Childs listed her communication skills as an area for improvement, stating that she allowed her passion to frustrate her when she dealt with certain situations and that in communications with others she occasionally came across as if she lacked respect for them.

On August 28, 2007, Jordan filed an EEOC charge claiming that she was subject to race and sex discrimination and retaliation by Kohl's. In the charge, Jordan alleged that Childs made racially insensitive remarks in her presence, continued to make such remarks after she informed him of her disapproval, and refused to promote her as retaliation for her opposition to his actions. Jordan also

claimed that Kohl's discriminated against her with regard to her pay. On July 20, 2009, the EEOC dismissed Jordan's charge. Jordan did not file a lawsuit based on these allegations.

On September 16, 2007, Jordan sent an email regarding Janna Garton, the assistant manager of the Hendersonville store, to several members of Kohl's management, including Childs, district manager Jana Wilkinson, and store manager Karl Moody. Jordan copied Garton on the email. In the email, Jordan complained that after some of the store lights went out before closing one night, Garton stood around "talking about nothing" rather than walking up the stairs to override the shutoff of the lights. The next day, Garton sent an email to management in response to Jordan's email, explaining why she was not prompt in turning the lights back on. Garton also complained that Jordan called her about the lights, yelled at her, and hung up the phone. She reported that Jordan was hostile toward her, harassed her, and referred to overweight people as "fat asses." Wilkinson forwarded both Jordan's email and Garton's response to Elisa Hudson, the Territory Human Resources Manager responsible for the Hendersonville store. Hudson spoke on the telephone with an emotional Garton, who relayed that she was afraid of Jordan and that Jordan had her "walking on eggshells."

In mid-December 2007, Kelli Barger, an employee in the Loss Prevention department, lodged a complaint against Jordan and submitted two written statements describing Jordan's actions. Barger reported to Hudson that Jordan had a nasty attitude toward her, degraded others, and was very condescending. Barger also noted that Jordan made negative remarks about overweight people,

which offended Barger. Barger had previously complained about Jordan to Childs but nothing had happened; thus, she sent her formal complaint directly to Hudson.

A few days after Barger's complaint, David Brown, another Kohl's employee, reported to Childs that Jordan called him at his home, was rude to him, and accused him of being a racist. Brown and his wife submitted written statements regarding Jordan's call to their home.

After learning of these incidents, Hudson directed Childs to meet with Jordan to address the complaints made by her co-workers. Hudson provided Childs with specific instructions as to what issues needed to be addressed and how they should be raised. On January 5, 2008, Childs and Moody sat down with Jordan to discuss the Barger and Brown complaints, among other topics. Jordan admitted having an icy relationship with Barger and admitted that she may have joked about an overweight person, but she insisted that she did not phone Brown and call him a racist. According to Childs, Jordan claimed that Brown would be sorry he ever said she called him. Childs did not reprimand Jordan. Rather, he gave her a copy of company policies prohibiting harassment and retaliation and asked her to provide a statement regarding the Barger and Brown complaints.

In March 2008, Kohl's received more complaints about Jordan from other Kohl's employees. On March 8, 2008, Mary Osborne lodged a complaint against Jordan, reporting that Jordan called her at home and spoke to her in an intimidating manner. Three days later, Kimberly Peterson-Koch submitted a lengthy, hand-written statement complaining that on multiple occasions Jordan had yelled at her, intimidated her, screamed at her over the phone, yanked merchandise from her hands,

demeaned her in front of customers, laughed at her, and made her cry. According to Koch, Jordan was incredibly intimidating, used her position to bully and intimidate, and caused Koch constantly to fear setting Jordan off. On March 12, 2008, sales associate Katie Osborne wrote a statement alleging that Jordan confronted her and told her that she was going to "knock Janna [Garton] to the ground." Katie Osborne reported the remark to Garton, who passed the information to Hudson and stated that she felt physically threatened by Jordan.

Following these complaints, Hudson again directed Childs to meet with Jordan. On March 18, 2008, Childs and Wilkinson sat down with Jordan to discuss these new complaints. Jordan stated that she had not threatened Garton and did not know why people would think she was rude or creating a hostile work environment. Jordan admitted that she did call Mary Osborne at her home. Again, Childs did not reprimand Jordan but asked her to write a statement about the complaints.

After the meeting with Childs and Wilkinson, Jordan called Hudson. During the call, Hudson perceived Jordan as loud and aggressive and often talking over her. Hudson then reviewed the history of complaints and written statements against Jordan, Jordan's performance evaluations, and her own communications with Jordan and determined that Jordan had engaged in repeated inappropriate communications toward her co-workers. Based on this information, Hudson decided to terminate Jordan's employment with Kohl's. Before firing Jordan, Hudson asked Peter Riley, the Regional Vice President of Kohl's, to review her decision to terminate Jordan. He approved the decision, and Jordan's employment with Kohl's ended on April 1, 2008.

On January 5, 2010, Jordan filed a lawsuit in federal court against Kohl's, alleging that Kohl's terminated her as retaliation for filing an EEOC charge, in violation of Title VII of the Civil Rights Act of 1964. Kohl's timely answered the complaint and denied all of Jordan's allegations. On April 15, 2011, Kohl's filed a motion for summary judgment. On May 17, 2011, the district court granted the motion for summary judgment and entered a final order dismissing Jordan's claims. The district court concluded that Jordan could not establish a prima facie case of retaliation because she had not presented evidence of a causal connection between her filing of the EEOC charge and Kohl's decision to terminate her employment. Jordan timely appealed the district court's order.

II.

We review a district court's grant of a motion for summary judgment de novo. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact remains for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). We must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). We may not "make credibility determinations or weigh the evidence," *id.*, because those are "jury functions." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once the movant presents evidence to meet its burden, the nonmoving party must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324. The burden falls on the nonmoving party to

"designate specific facts or evidence in dispute," *Anderson*, 477 U.S. at 249-50; and if that party fails to make the necessary showing on an element upon which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

Jordan bases her Title VII retaliation claim on circumstantial, rather than direct, evidence. Accordingly, her claim is analyzed under the familiar *McDonnell Douglas / Burdine* framework. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010). Under this framework, Jordan must first establish a prima facie case of unlawful retaliation by showing that 1) she engaged in activity protected under Title VII; 2) that Kohl's knew about her exercise of the protected activity; 3) that Kohl's took an adverse employment action against her; and 4) that there was a causal connection between her protected activity and the adverse employment action. *Id.* at 491-92. If Jordan meets this burden, "the burden of production shifts to [Kohl's] to 'articulate some legitimate, nondiscriminatory reason for [its action.]'" *Id.* at 492 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If Kohl's satisfies its burden of production, then the burden shifts back to Jordan to demonstrate pretext—that Kohl's "proffered reason was not the true reason for the employment decision." *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 320 (6th Cir. 2007) (citation omitted).

The parties do not dispute that Jordan satisfied the first three elements of a prima facie case of retaliation and that Kohl's presented a legitimate, nondiscriminatory reason for terminating her, namely Jordan's consistently negative attitude toward her co-workers and the alleged physical threat she made against Garton. They disagree only as to whether Jordan showed a causal connection

between her EEOC charge and her termination and whether she presented sufficient evidence that

Kohl's legitimate reason was pretext for discrimination. The district court determined that Jordan

had not provided evidence of a causal connection and, thus, could not make out a prima facie case

of retaliation; it did not reach the question of pretext. Because we conclude that Jordan cannot show

that Kohl's proffered reason for terminating her was pretext for discrimination, we will assume,

*arguendo*, that Jordan could show a causal connection between her EEOC charge and her dismissal.

A plaintiff can show pretext by demonstrating that: "(1) the employer's stated reason for

terminating the employee has no basis in fact, (2) the reason offered for terminating the employee

was not the actual reason for termination, or (3) the reason offered was insufficient to explain the

employer's action." *Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 545 (6th Cir. 2008).

"Whichever method the plaintiff employs, he always bears the burden of producing 'sufficient

evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the

defendants intentionally discriminated against him.'" *Clark v. Walgreen Co.*, 424 F. App'x 467, 474

(6th Cir. 2011) (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (alteration in

original)). An employer's explanation cannot be rejected "unless there is a sufficient basis *in the

evidence* for doing so." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir.

1994) (emphasis in original).

Jordan insists that she can show pretext in two ways. First, she claims that the only reason

Hudson knew about the complaints against her is because Hudson asked Childs to gather them for

her after Jordan's EEOC filing. This explanation is insufficient. Most of Jordan's co-workers who

filed complaints either submitted them directly to Hudson or to someone other than Childs. The only complaint Childs forwarded to Hudson was Brown's. Moreover, Jordan offered no evidence to suggest that Childs's involvement influenced the complaints that Jordan's co-workers made. Jordan merely speculates that because she complained about Childs in her EEOC charge, his involvement in the complaints against her was improper. Such unsubstantiated speculation does not create or support a reasonable inference of pretext.

Moreover, Kohl's claims that the honest belief rule prevents Jordan from showing pretext. Under the honest belief rule, "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998)). "An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied 'on the particularized facts that were before it at the time the decision was made.'" *Id.* (quoting *Smith*, 155 F.3d at 807). "The key inquiry in assessing whether an employer holds such an honest belief is 'whether the employer made a reasonably informed and considered decision before taking' the complained-of action." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598-99 (6th Cir. 2007) (quoting *Smith*, 155 F.3d at 807). "[T]he decisional process need not be optimal, only reasonably informed and considered." *Russell v. Univ. of Toledo*, 537 F.3d 596, 605 (6th Cir. 2008).

Jordan avers that Kohl's cannot rely on the honest belief doctrine because all of the information given to Hudson was supplied by Childs, the person about whom Jordan complained to the EEOC. That Childs served as an intermediary for Hudson does not suggest that Hudson did not make a reasonably informed and considered decision to terminate Jordan. Although Jordan denies the substance of Brown's complaint as well as the alleged threat she made towards Garton, she admits that these complaints were in fact provided to Hudson. Other than Jordan's own testimony, there is no proof that those incidents did not occur. Therefore, it was reasonable for Hudson to rely on those complaints in deciding whether to terminate Jordan. Furthermore, Hudson submitted her decision to terminate Jordan to Peter Riley, Kohl's Regional Vice President, for review. Riley reviewed Hudson's information on Jordan and agreed with the decision to terminate Jordan's employment. In light of this evidence and the lack of evidence showing that Hudson's actions were unreasonable, the honest belief doctrine precludes a finding of pretext in this situation.

Second, Jordan asserts that one of Hudson's reasons for firing her—that she allegedly threatened to physically harm Garton—was not sufficient to warrant her termination because her replacement, Randy Durbin, did assault Garton and was not terminated. Jordan claims that because she was subjected to "a witch hunt prompted by an EEOC charge against William Childs," she was terminated by Hudson while Durbin's assault was handled locally by Childs. A plaintiff can show pretext by presenting evidence that "other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the

employer contends motivated its discharge of the plaintiff." *Russell*, 537 F.3d at 607 (quoting *Manzer*, 29 F.3d at 1084).

Kohl's insists that Jordan cannot show pretext by comparing her treatment to that of Durbin because Durbin is not a similarly-situated individual. This court applies a strict definition of similarly-situated individuals. A similarly-situated comparator "'must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

Although Hudson admitted that Jordan would not have been terminated if she had not threatened Garton, Jordan's argument is unavailing. Differentiating circumstances distinguish Durbin's conduct from Jordan's. For one, there is no evidence that Durbin had a history of complaints from co-workers similar to Jordan's. *See Russell*, 537 F.3d at 607-08. Moreover, he was not subject to discipline by the same supervisor as Jordan. Four months after terminating Jordan, Hudson changed positions and was no longer in charge of human resources at the Hendersonville store; she did not know who Durbin was, much less know about his incident with Garton. Thus, because Durbin was not similarly-situated to Jordan, Jordan has not presented evidence of pretext by comparison.

III.

Because Jordan did not present evidence demonstrating that Kohl's stated reason for terminating her employment was pretext for discrimination, Kohl's was entitled to summary judgment. Therefore, we AFFIRM the district court's order granting summary judgment in favor of Kohl's.