**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0153n.06
Filed: February 25, 2005

**No. 04-1067**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| Penny DeBoer, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Musashi Auto Parts, Inc., | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

**Before: GUY and ROGERS, Circuit Judges, and DOWD, District Judge.**[*]

**Rogers, Circuit Judge**. Plaintiff Penny DeBoer appeals the district court's dismissal of her suit for pregnancy, gender, and FMLA discrimination. DeBoer alleged that her former employer, Musashi Auto Parts, Inc., demoted her after she informed Musashi that she was pregnant and was expecting a problem pregnancy, and requested FMLA leave. Because DeBoer has succeeded in presenting a prima facie case of discrimination, and because she has met her burden in providing evidence that Musashi's proffered reason for her demotion was pretextual, the judgment of the district court is reversed and the case remanded for further proceedings.

---

[*]The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

**I.**

DeBoer was an employee at Musashi's Battle Creek, Michigan, facility from October 26, 1998, until June 19, 2002. When she began her employment, DeBoer was a temporary employee. On January 7, 1999, DeBoer received an offer of regular employment from Musashi. According to the offer letter, DeBoer's employment "will be governed by . . . the provisions of [Musashi's] Associate Handbook." DeBoer accepted the offer of employment on January 26, 1999. The employee Associate Handbook discussed in DeBoer's offer letter included several provisions alleged by the parties to be relevant to this dispute. A provision entitled "Associate Counseling," provision 7.60.0, states that

> Generally, your supervisor will discuss any concerns with you first, explain where improvements are necessary, and tell you what is expected to correct the situation. . . . [Musashi] will determine any exceptions to this provision, in its sole discretion. There may be instances where immediate discharge is required. This provision is not intended to modify the "at will" employment relationship (refer to section 1.20.0).

The handbook's at-will employment provision states that "[t]he contents of this handbook are not to be interpreted as an employment contract," and that "[e]very associate is employed 'at will.'"

In February, 2000, DeBoer was promoted to a temporary supervisor position. DeBoer's performance was later evaluated, although the date of that evaluation is unclear.[1] The evaluation

---

[1] Musashi contends on appeal that the evaluation occurred eight months prior to the date on which DeBoer announced her pregnancy, *see* Appellee's Br. at 7, which would place the evaluation in late 2000 or early 2001. In any event, it is clear that the evaluation was conducted at least several

indicated that DeBoer needed to improve in several areas, such as "analysis, problem solving, judgment/decision making skills," "planning, creativity, adaptability/flexibility," and "teamwork/delegation/leadership/associate development." DeBoer's supervisor position became permanent in October, 2000.

DeBoer alleges that on approximately August 24, 2001, she informed her supervisor, Andy Langs, that she was pregnant, and that at some time thereafter she informed him that she was expecting a problem pregnancy. The Human Resources Department learned of DeBoer's pregnancy at approximately this same time.

In September, 2001, the senior production manager, Joe Seitz, who was Andy Langs's supervisor, received a request from six employees supervised by DeBoer, which stated that the employees wanted to meet "concerning a morale boost." There is no mention of DeBoer in the request itself; a second sheet of paper that is of unknown relation to the request was labeled with DeBoer's name in a different handwriting. At Seitz's request, Langs spoke with the employees who signed the letter. According to Langs, several of the employees complained about DeBoer's poor supervisory skills. On either October 17, 2001, or October 25, 2001, Langs spoke with DeBoer regarding the complaints and her supervisory skills.

According to Musashi, at some point in late October or early November, Seitz and the Human Resources Department decided that DeBoer could not continue as a supervisor, but would

months before DeBoer announced her pregnancy.

be offered a demotion rather than be terminated. On November 13, 2001, DeBoer requested paperwork in order to file for FMLA leave. On November 14, 2001, Malcolm Satterfield, the Assistant Human Resources Director, called DeBoer and asked her to meet with him that day. At the beginning of the meeting, DeBoer presented her request for FMLA leave, which Satterfield approved. DeBoer was then presented with a letter stating that DeBoer did not "have the abilities to continue as a Supervisor." She was offered a demotion to the position of associate. On November 16, 2001, DeBoer accepted the demotion to the position of machine operator. She was not counseled by Musashi prior to the demotion.

DeBoer was on FMLA leave from December 13, 2001, through March 10, 2002. She returned to work following her leave, but ultimately resigned on June 19, 2002. In September, 2002, DeBoer sued Musashi in state court, and the case was removed by Musashi to the Western District of Michigan in November, 2002. DeBoer alleged gender and pregnancy discrimination under Title VII and the Michigan Elliott-Larsen Civil Rights Act ("ELCRA") and retaliation under the Family and Medical Leave Act, and additionally alleged breach of contract, a claim not at issue on appeal.

Musashi moved for summary judgment on all counts, and on December 10, 2003, the district court granted the motion. With respect to all of DeBoer's discrimination claims, the district court held that even assuming DeBoer had met her burden of establishing the prima facie cases for each, Musashi had articulated a legitimate non-discriminatory reason for DeBoer's demotion and DeBoer had failed to demonstrate that the reason was pretextual. This timely appeal followed.

**II.**

A district court's decision to grant summary judgment is subject to de novo review. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). This court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**A.      DeBoer Has Established a Prima Facie Case of Discrimination**

Although the three types of discrimination alleged by DeBoer—pregnancy/gender discrimination under Title VII, discrimination under ELCRA, and FMLA retaliation—all have slightly different requirements for the establishment of a prima facie case, DeBoer has put forth sufficient evidence to meet the requirements of each.

A claim of discrimination on the basis of pregnancy is treated in the same manner as a claim of discrimination on the basis of sex under Title VII. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000). In order to establish the prima facie case, the plaintiff must show the following four elements: "1) she was pregnant, 2) she was qualified for her job, 3) she was subjected to an adverse employment decision, and 4) there is a nexus between her pregnancy and

the adverse employment decision." *Id.* The prima facie case is not meant to be an onerous burden, and the amount of evidence a plaintiff must produce on the elements is not great. *Id.* at 660.

DeBoer clearly was pregnant, and was subjected to an adverse employment decision when she was demoted from supervisor to machine operator. She also submitted evidence demonstrating that she was qualified for her job, in the form of performance reviews and the testimony of her supervisor that she was qualified. Because this court in *Cline* held that the proffered reason for the adverse employment decision itself cannot be counted against other evidence of job qualification at this stage, 206 F.3d at 660-61, DeBoer has sufficiently demonstrated that she was qualified. Finally, the temporal proximity between DeBoer's announcement of her pregnancy, her filing for FMLA leave, and her demotion satisfies the "nexus" requirement. DeBoer has established a prima facie case of pregnancy discrimination.

In order to establish a prima facie case of discrimination in violation of Michigan law, a plaintiff must present evidence of the following four elements: (1) the plaintiff belongs to a protected class; (2) she suffered an adverse employment action; (3)she was qualified for the position; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination. *Sniecinski v. Blue Cross & Blue Shield*, 666 N.W.2d 186, 193 (Mich. 2003); *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 521 (Mich. 2001). As these four elements are very similar to the four elements of a prima facie case of discrimination under Title VII, the same evidence put forth by DeBoer establishes a prima facie case here. She was pregnant, qualified for her position, and she suffered an adverse employment action. The timing of her demotion, following closely after her

announcement of her pregnancy, sufficiently constitutes a circumstance giving rise to an inference

of unlawful discrimination. A prima face case of discrimination under ELCRA has been established.

Finally, a prima facie case of FMLA retaliation is established by providing evidence of the

following three elements: (1) the plaintiff availed herself of a protected right under the FMLA,

including notifying her employer of her intent to take leave; (2) she was adversely affected by an

employment action; and (3) there was a causal connection between the exercise of the protected right

and the adverse employment action. *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 314

(6th Cir. 2001). In this case, it is undisputed that DeBoer requested FMLA leave, and that her

demotion constitutes an adverse employment action. Furthermore, the timing of her demotion, a

mere one day following her request for FMLA paperwork, provides a causal connection. *Id*. While

Musashi has stated, in the context of its argument that DeBoer failed to demonstrate pretext, that the

decision to terminate DeBoer was made two weeks prior to her request for FMLA paperwork, the

prima facie case is not affected. Musashi has not argued that DeBoer failed to establish a prima

facie case of FMLA discrimination; according to Musashi, "[i]n this appeal, the issue is whether

[DeBoer] has proven that [Musashi's] proffered reason for demoting her was pretextual."

Appellee's Br. at 16. Accordingly, DeBoer has established a prima facie case of FMLA retaliation.

**B. DeBoer Has Provided Sufficient Evidence that Musashi's Proffered Non-Discriminatory Reason for her Demotion was Pretextual**

All three types of discrimination alleged by DeBoer proceed under the familiar burden-

shifting scheme of *McDonnell Douglas*. *See Skrjanc*, 272 F.3d at 315 (FMLA); *Cline*, 206 F.3d at

659 (Title VII); *Sniecinski*, 666 N.W.2d at 133-34 (ELCRA). Following the establishment of the prima facie case, a presumption of discrimination arises, and the burden shifts to the defendant to "'rebut the presumption of discrimination by producing evidence that the plaintiff was [demoted] . . . for a legitimate, nondiscriminatory reason.'" *Cline*, 206 F.3d at 666 (quoting *Tex. Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). If the defendant is successful in rebutting the presumption of discrimination, the burden again shifts to the plaintiff, who must "'demonstrat[e] that the proffered reason was not the true reason for the employment decision.'" *Id.* (quoting *Burdine*, 450 U.S. at 255-56).

Musashi has met its burden of articulating a nondiscriminatory reason for DeBoer's demotion, as it has provided evidence that employees supervised by DeBoer complained about her. Finally, then, there remains the central issue of whether DeBoer has met her burden of providing evidence demonstrating that she was not demoted because of poor supervisory skills, but instead, because of her pregnancy. Although the question is close, DeBoer has presented sufficient evidence that Musashi's proffered reason for her demotion was pretextual.

When there is no direct evidence of discrimination, a plaintiff may establish pretext indirectly "by showing 'that the employer's proffered explanation is unworthy of credence.'" *Cline*, 206 F.3d at 667 (quoting *Burdine*, 450 U.S. at 256). This court has often reiterated its approval of the framework identified in *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078 (6th Cir. 1994), providing for three separate methods to demonstrate pretext indirectly. *See Peters v. Lincoln*

*Electric Co.*, 285 F.3d 456, 471-72 (6th Cir.2002); *Gray v. Toshiba America Consumer Products,*

*Inc.*, 263 F.3d 595, 600 (6th Cir. 2001). The process laid out in *Manzer* is as follows:

> To make a submissible case on the credibility of his employer's explanation, the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge. The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.,* that they are "factually false." The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. . . .

> The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or coverup.

29 F.3d at 1084 (internal quotations and citations omitted).

This case falls squarely under the "second" type of showing. DeBoer has argued that a number of Musashi's actions constitute circumstantial evidence that discrimination was the true motivation. Specifically, DeBoer points to Musashi's alleged failure to follow its Associate Counseling policy, the fact that her supervisory skills were never questioned until after she informed Musashi that she was pregnant, and the suspicious timing of her demotion. With regard to the

suspicious timing, there are two separate potential time lines. First, there is the fact that DeBoer was demoted one day after she requested FMLA paperwork. This time line is clearly suspicious. Musashi, however, argues that the decision to demote DeBoer had already been made two weeks prior to DeBoer's request for paperwork. However, even assuming for the moment that Musashi's version does not present a question of fact for a jury to decide, the demotion decision would still be suspiciously timed, as DeBoer announced her pregnancy at the end of August, 2001, and the decision was allegedly made approximately two months later. Under either set of facts, therefore, DeBoer can argue that the timing of her demotion was suspicious.

Although DeBoer has offered perhaps the minimal amount of circumstantial evidence of pretext needed to survive summary judgment, she has nonetheless succeeded in meeting her burden. A plaintiff "may not rely simply upon [her] prima facie evidence but must, instead, introduce additional evidence of . . . discrimination." *Manzer*, 29 F.3d at 1084. The Supreme Court has explained that this is not a requirement that the plaintiff provide evidence both that the employer's proffered rationale is false and that discrimination is the true reason. Rather, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000); *see also Gray*, 263 F.3d at 602 (discussing *Reeves*). However, if on the basis of the evidence presented by the plaintiff, "no rational factfinder could conclude that the action was discriminatory," then summary judgment will nonetheless be appropriate. *Reeves*, 530 U.S. at 148.

It is the combination of evidence presented by DeBoer that demonstrates pretext. As Musashi has argued, "temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual." *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 317 (6th Cir. 2001). However, it is also clear that suspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence. For instance, in *Chandler v. Specialty Tires of America (Tennessee), Inc.*, the plaintiff was terminated at the end of her period of FMLA leave. 283 F.3d 818, 826 (6th Cir. 2002). In reviewing a jury verdict in her favor, this court, while reiterating the rule of *Skrjanc* that "proximity alone may not survive summary judgment," upheld the verdict in favor of the employee because, other than evidence of the suspicious timing, "the jury weighed additional evidence, including the credibility of Defendant's proffered reason for termination, the demeanor of the witnesses on the stand, and the evidence of Plaintiff's prior [excellent] work habits." *Id.* A similar result was reached in *Arban v. West Publishing Corp.*, 345 F.3d 390 (6th Cir. 2003), which again upheld a jury verdict in the employee's favor. Arban became ill on December 23, and resigned on January 8 after he had been told in the interval that he was being fired. This court stated that "[a]lthough 'temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual,' the jury weighed additional evidence, including evidence of Arban's performance appraisals and the demeanor of witnesses on the stand." *Id.* at 403 (quoting *Skrjanc*). Like the plaintiffs in *Chandler* and *Arban*, DeBoer has demonstrated suspicious timing, and, as discussed below, has produced other independent circumstantial evidence of pretext.

One piece of additional evidence is the timing of the events relied upon by Musashi in formulating its proffered reason for DeBoer's demotion, an issue which, although related to the timing of DeBoer's demotion, is also distinct. Specifically, although DeBoer's performance evaluation indicating that she needed improvement occurred many months before she announced her pregnancy, Musashi did not have a negative reaction to DeBoer's allegedly poor supervisory skills until after she announced her pregnancy. This is similar to the situation in *Arban*, in which the employee, a sales manager, had misrepresented an old account as a new account and engaged in other questionable practices several months prior to his termination, which occurred while he was on FMLA leave. 345 F.3d at 395. In addition to finding the timing of Arban's termination to be suspicious, because, as noted above, he was told he was being fired only several days after taking FMLA leave, this court in *Arban* noted that it was suspicious that before Arban took FMLA leave, management was open to being persuaded that Arban should stay, despite his misconduct. *Id.* at 401-02; *see also Danielson v. City of Lorain*, 938 F.2d 681, 683-84 (6th Cir. 1991) (noting that if an employee successfully demonstrated that an employer deliberately created a "paper trail" documenting poor performance only after deciding to terminate an employee because of her age, that employee would be entitled to judgment "no matter how inadequate her work performance was"). The fact that Musashi did not appear to be troubled by DeBoer's supervisory skills until after she announced her pregnancy is additional evidence of pretext.

As further evidence of pretext, DeBoer has presented evidence that she was not counseled before being demoted, despite a provision in the Associate Handbook calling for such counseling.

Musashi argues that it fully complied with the policy because the policy itself permits exceptions. This argument misses the point, however, because the existence of the Associate Counseling provision in the Handbook indicates that generally Musashi does counsel its employees before terminating or demoting them, and the decision not to counsel a pregnant employee expecting a problem pregnancy does have some small probative value on the issue of whether Musashi's proffered reason for DeBoer's demotion is a pretext for pregnancy or FMLA discrimination. Certainly, this is not a situation such as was present in *Skalka v. Fernald Environmental Restoration Management. Corp.*, in which this court held that an employer's failure to follow the procedures that it enacted for the sole purpose of conducting a fair and objective layoff was sufficient evidence by itself to support a jury verdict in the employee's favor. 178 F.3d 414, 421-22 (6th Cir. 1999). However, as *Skalka* demonstrates, an employer's failure to follow a policy that is related to termination or demotion can constitute relevant evidence of pretext. Although less probative than the type of evidence offered in *Skalka*, the evidence that Musashi did not counsel DeBoer is nonetheless appropriately considered as additional evidence of pretext.

Finally, there are two minor pieces of evidence that, although of small probative value, do add to the overall total of evidence demonstrating pretext. In his deposition, DeBoer's supervisor Langs acknowledged that it could be problematic for the department to have a supervisor on intermittent leave. Such a statement demonstrates a motive for the demotion. Second, as discussed above, the criticism of DeBoer relied upon by Musashi as a reason for her demotion stemmed from a request for a "morale boost," which request did not mention DeBoer at all. It is possible that, as

DeBoer argues, Musashi solicited the criticism of DeBoer in order to solidify its case against her. Because Musashi relied upon that criticism as its primary justification for her demotion, evidence that the criticism arose in an odd way is probative of pretext.

The combination of the suspicious timing of DeBoer's demotion, the suspicious timing of Musashi's negative reaction to DeBoer's allegedly poor supervisory skills, Musashi's decision not to counsel DeBoer before demoting her, Langs's statement, and the incongruity of the request for a morale boost resulting in Musashi's main justification for DeBoer's demotion sufficiently demonstrates pretext so that summary judgment in Musashi's favor is precluded. It may be true that this evidence barely qualifies to demonstrate pretext, but nonetheless, it is enough to submit the case to a jury. The relatively small showing of pretext may result in a victory for Musashi at trial, but that is not for this court to consider.

## III.

For the foregoing reasons, the decision of the district court granting summary judgment is reversed and the case remanded for further proceedings consistent with this opinion.