NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0495n.06
Filed: July 13, 2007

**No. 06-4414**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LEE CAMPBELL, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| WASHINGTON COUNTY PUBLIC | ) | SOUTHERN DISTRICT OF OHIO |
| LIBRARY, et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

**Before: RYAN, DAUGHTREY, ROGERS, Circuit Judges.**

**ROGERS, Circuit Judge.** This appeal from a magistrate judge's[1] order granting summary judgment concerns Lee Campbell's claim that the Washington County Public Library and its director, Dr. Larry Nash White, violated the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*, when the Library discharged Campbell. Because no jury could find that the Library acted on impermissible grounds, we affirm.

**BACKGROUND**

---

[1]In a one sentence order, U.S. District Court Judge George C. Smith transferred this case to Magistrate Judge Terrence P. Kemp "[u]pon receipt of written consent of all parties" and "pursuant to 28 U.S.C. § 636(c)." Order of Jan. 5, 2005.

On April 28, 2004, Campbell, a former Washington County Public Library Reference Manager, filed a complaint in the U.S. District Court for the Southern District of Ohio alleging that the Washington County Public Library Board of Trustees and Larry Nash White, who was the Library's Director and Campbell's supervisor at the time of the alleged improper acts, violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, the Family and Medical Leave Act, 29 U.S.C. § 2611(4), and Ohio's wrongful discharge law. On appeal, Campbell challenges the granting of summary judgment only as to the FMLA claim. (The complaint also included allegations against members and leaders of the Library Board. Campbell is not pursuing these allegations.)

In 1995, Campbell began working for the Washington County Public Library, which promoted her to reference manager. In that capacity, Campbell supervised five employees in the reference department, provided reference service, taught computer classes to Library patrons, and supervised two employees in the computer lab.

In 2001, Campbell's mother fell ill from colon cancer, and, between July 10, 2001, and April 30, 2003, Campbell took twenty-six days of FMLA-protected leave to care for her sick mother. In May 2003, Campbell's mother was hospitalized, and Campbell took an additional nine days of FMLA leave. That same month, Campbell's sister and sister-in-law began to care for Campbell's sick mother, and Campbell was able to return to work without needing to take more FMLA leave.

Fearing that her job was in danger because she took FMLA leave, Campbell contacted the Department of Labor on August 15, 2003, to "protect my rights under FMLA." (The Library learned

of the complaint shortly thereafter.)  In her complaint to the Department of Labor, Campbell alleged that she received an adverse performance evaluation and that the Library reduced her responsibilities because she took FMLA leave.

Campbell claims that her complaint upset White, and she alleges that the Library illegally responded to her taking FMLA leave and to her contacting the Department of Labor.  First, according to Campbell's affidavit, she received a negative performance evaluation in 2002.  The evaluation included a comment that "[Campbell] is often not even there," and the Library put Campbell on 120 days of probation.

Second, according to Campbell's affidavit, White, Campbell's supervisor, "attempted to remove and/or reduce [Campbell's] responsibilities" by having Susan Wells, from a different department, supervise the computer lab that Campbell previously supervised.  White denied that he reduced Campbell's responsibilities because of her FMLA leave and instead suggested that he reassigned the supervision of the computer lab because Campbell was on a different floor. (Campbell notes that Wells, who took over the supervision of the lab, did not work on the same floor as the lab either.)

Third, according to Campbell's affidavit, on September 29, 2003, White "commenced to treat [her] with contempt and verbally abused [her] in front of [her] staff, contermanding [sic] [her] directives to them."   She does not offer additional details about the incident.

Fourth, according to Campbell's affidavit, on September 29, 2003, White changed Campbell's job responsibilities by removing her "mezzanine duties." White subsequently reduced her other responsibilities, for example, by removing her from the interviewing process, disbanding the Planning Team, which Campbell coordinated, and preventing her from distributing extra department hours.

Fifth, according to Campbell's affidavit, on November 14, 2003, White recommended to the Board that its Personnel Committee suspend Campbell, and on December 3, 2003, the Library suspended Campbell for 14 days without pay. On December 17, 2003, the Library fired Campbell.

The Library presented evidence that its decisions to suspend and terminate Campbell were not related to her taking FMLA leave. First, it presented evidence that Campbell's suspension was related to her poor performance and her lack of professionalism. For example, there is evidence that Campbell carried an egg timer with her when dealing with patrons to limit the amount of time that she spent with a patron. Some staff members considered the practice "abusive, demeaning, [and] inappropriate," and few, if any, employees in her department had positive impressions of her. Other evidence shows that Campbell was generally disagreeable in meetings, lacked sufficient supervisory skills, and failed to follow instructions.

Second, the Library presented evidence that Campbell exposed the Library to legal liability by commenting on the disabilities of a job applicant. In discussing the merits of a job applicant on October 29, 2003, in an email to White regarding a potential employee, Campbell listed a series of

reasons not to hire the applicant. She wrote,"I did not include [the applicant in a list of persons to recommend for the position] because [the applicant's] email mentioned that she would have to quit Kent State a semester before graduating to take the job. Also, I knew [the applicant] as a volunteer in the lab and I don't believe she is the best person for the job." At the end of Campbell's email, she wrote, "You do need to know that [the applicant] would fall under the ADA," a comment that the Library viewed as creating a potential for litigation. Campbell denies that she did anything wrong by mentioning the applicant's disability. (In fact, she originally sued the Library arguing that the Library violated the ADA by discharging her in retaliation for her decision to defend the disabled applicant, a claim that she does not pursue on appeal.)

Third, the Library detailed Campbell's poor performance in a December 3, 2003, letter of written reprimand. The letter detailed, for example, how Campbell "lied to the Director regarding the capabilities and previous work history" of an employee, "committed insubordination in not following the Director's written instructions in preparing materials" for interviews, "verbally abused [a reference employee] by aggressively and inappropriately disciplining [the employee]," and caused employees to fear her. The letter noted that Campbell's department had the highest turnover rate and an "apprehensive" staff, and that the Director could no longer trust Campbell in implementing Library policies.

Fourth, the Library presented evidence that the Library was undergoing reorganization and that this process led to the termination of Campbell's position. At some point in late 2002 or early 2003, the Library began the process of cutting its budget and consolidated departments, moved staff

around, conducted surveys, considered closing branches, and limited services in an effort to cut costs. The Library concluded that the reference manager was unnecessary and eliminated the position. The responsibilities of reference manager fell to other employees, and Campbell was the only person who lost her job during the reorganization.

Campbell counters that the reorganization process was part of a complex scheme to hide the Library's decision to discharge her for taking FMLA leave. Specifically, she notes that, two days before Campbell's suspension, the Library hired Justin Mayo to perform many of the reference manager tasks and that the Library did not consider Campbell for the replacement position. In addition, there is some limited evidence that removing Campbell was part of the reorganization

process.[2]  Finally, Campbell notes that the reorganization process did not follow normal Library

procedures.

On September 8, 2006, Magistrate Judge Kemp granted summary judgment and dismissed

Campbell's complaint after making three findings.  First, the magistrate judge found that Campbell

could establish a *prima facie* case of discrimination because "the library defendants admit that Ms.

Campbell exercised the rights afforded to her under FMLA"; there was, at a minimum, a factual

dispute whether Campbell suffered an adverse employment action; and the temporal connection

between Campbell's taking FMLA leave and her discharge was sufficient to show causation.

Second, the magistrate judge found that the Library satisfied its burden of production by articulating

a valid rationale for its actions, because "the record is clear that Ms. Campbell lost job duties . . . and

---

[2]White testified as follows:

Q:    Isn't it clear that the restructuring is in part to address deficiencies you
perceived on the part of the reference manager?
A:    In part. . . .  But, again, this was a process that started about eight months
prior and . . . is actually still going on.
Q:    But specifically you reference in this document the suspension of the
reference manager; correct?
A:    Correct.
Q:    Would you agree that the timing of the reorganization or restructuring, which
resulted in the elimination of [Campbell's] job, is coincidental, coming two weeks
after her suspension?
A:    Some would view it that way.

JA 170-71.  Campbell stretches this testimony when she argues that "White also admitted that the
alleged 'reorganization' was, in fact, meant to address Campbell's purported supervisory problems,
and not simply a question of funding."  White testified only that Campbell's deficiencies were
merely one part of the reorganization and "some would view" the timing as suspicious.

ultimately lost her job . . . because the library was reorganizing and the reference manager position was being eliminated[ and] the record indicates that Ms. Campbell was not offered another position at the library because of Ms. Campbell's actions." Third, the magistrate judge rejected Campbell's arguments that the Library's justifications for firing her were pretextual. The magistrate judge granted summary judgment as to all of Campbell's claims. Campbell filed a notice of appeal on September 8, 2006, and the magistrate judge rejected Campbell's motion for reconsideration on October 25, 2006.

**ANALYSIS**

**A.      Standard of Review**

This court reviews de novo an order granting summary judgment. *Tate v. Boeing Helicopters, Inc.*, 55 F.3d 1150, 1153 (6th Cir. 1995). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party, in this case the Library, bears the "burden of showing the absence of a genuine issue as to any material fact," and the evidence submitted "must be viewed in the light most favorable to the opposing party," in this case, Campbell. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

When a plaintiff argues that an employer illegally retaliated for an FLMA claim, this court applies the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973), burden shifting

analysis. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). After Campbell shows (1) that she availed herself of a protected FMLA right, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her exercise of her rights and the adverse employment action; the burden shifts to the Library to offer a legitimate, nondiscriminatory rationale for the adverse action. Campbell then has an opportunity to show that the Library's articulated reason was really pretext to mask discrimination. *Id*. at 314-15.

**B.      The Magistrate Judge Properly Granted Summary Judgment Against Campbell**

In this case, Campbell established a *prima facie* case of discrimination,[3] because she faced adverse employment action shortly after taking FMLA leave and filing a complaint to the Department of Labor and because there is evidence White was upset about Campbell's complaint. (White's state of mind establishes more than a temporal proximity between Campbell's complaint and her discharge. *See, generally, Campbell v. Univ. of Akron*, 211 F. App'x 333, 351 (6th Cir. 2006) (discussing the role of a temporal connection in establishing a *prima facie* case).) The Library offered a legitimate non-discriminatory reason for the adverse employment actions: the Library was undergoing a cost-cutting reorganization and Campbell was not a valued employee.

Campbell's four attempts to show that the Library's justifications were pretext to hide its true motivation are all unsuccessful. Her first argument regarding her interactions with a job applicant

---

[3]The Library argues that Campbell did not establish a *prima facie* case of discrimination because Campbell was not a good employee. These arguments best fit as arguments of a legitimate justification, discussed below.

does not establish pretext. The Library told Campbell that she was insubordinate when she failed to ask an applicant certain questions. Campbell argued before the magistrate judge and argues on appeal that she was not insubordinate because the questions that she asked were the same questions that White instructed her to ask. She argues, without any direct evidence from the record, that the Library concocted the excuse of Campbell's alleged insubordination as a pretext to hide the Library's desire to retaliate against Campbell for taking FMLA leave. Campbell's argument lacks merit because the issue before the court is not whether Campbell, in fact, was insubordinate (i.e. whether she asked the correct questions (which is unclear from the record)); instead, the issue is whether the Library legitimately perceived Campbell as being insubordinate (an issue that Campbell chooses not to confront directly). *See Sosby v. Miller Brewing Co.*, 211 F. App'x 382, 386-87 (6th Cir. 2006); *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). Campbell's mere assertion that the Library's proffered reason has no basis in fact (i.e. that Campbell did, in fact, ask the right questions) is insufficient to call into question the Library's honest belief (i.e. that Campbell asked the wrong questions). *See Majewski*, 274 F.3d at 1117; *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 794-95 (6th Cir. 2006). For these reasons, Campbell has not shown that the insubordination issue was pretext because she has not shown that White deliberately used the insubordination issue to cover for the real reason for the adverse employment actions at issue in this case. That is, even if White were mistaken as to whether Campbell was, in fact, insubordinate, such a mistaken belief does not amount to pretext for FMLA discrimination. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 806-08 (6th Cir. 1998) (noting that where the employer can demonstrate an honest belief in its proffered reason based on reasonable reliance on particularized facts, the

inference of pretext is not warranted). Instead, Campbell must present evidence that the Library's belief was more than just a mistake, *Majewski*, 274 F.3d at 1117, and she does not demonstrate on appeal that such a showing was made.

Campbell's second argument, namely that the magistrate judge misinterpreted her comments about a disabled applicant, fails for similar reasons. Campbell argues that the magistrate judge erred in interpreting Campbell's statement as urging the Library not to hire the applicant, but, according to Campbell, she did not, in fact, want the Library to pass over a qualified applicant because of the applicant's disabilities. Campbell's argument fails because the court's inquiry is not whether Campbell subjectively sought to discriminate against a disabled applicant. The inquiry here, instead, is whether the Library had reasons to reprimand Campbell for mentioning an applicant's disability in an email that urged the Library not to hire the applicant. Even if Campbell subjectively wanted the Library to overlook the applicant's disability, the Library had reason to read her email as encouraging the Library not to hire an applicant because of a disability. Campbell argues that the Library's reading was wrong; however, she has not tried to show that the Library's reading of the email, assuming it was mistaken, was done as pretext to cover for the Library's decision to fire her because of her FMLA leave. For this reason, Campbell's second effort to show pretext fails.

Third, Campbell argues unconvincingly that the circumstances surrounding her discharge show that the reorganization was not the true motivation for firing her. Campbell did not present this argument before the magistrate judge; had she done so, the magistrate judge should have rejected it. The only evidence to support this claim is (1) that nobody had been fired since April 1999, (2)

some people did not know about the reorganization until either February or March 2003, (3) the

reorganization plan mentioned the suspension of the reference manager, (4) other employees handled

the work of the reference manager, and (5) the Library hired Justin Mayo around the time that it fired

Campbell. Such unrelated strands of evidence cannot show that the Library juggled around positions

merely to camouflage Campbell's adverse employment action as a reorganization. Indeed, the

reorganization had an impact on almost every part of the Library system, took careful planning, and

led to the demotion of another employee and a reduction of the Library's hours. No reasonable juror

could find, based on this record, that the Library engaged in such an elaborate plot just to hide its

decision to take adverse employment action against an employee who contacted the Department of

Labor to protect her FMLA rights.

Fourth, Campbell argues that the Library did not follow its own disciplinary procedures.

Campbell neither presented this argument to the magistrate judge, nor elaborates on appeal exactly

how the Library failed to follow its own policies. She says that the Library did not follow its

progressive disciplinary procedures, but, because Campbell is unable to explain how the Library

deviated from its normal procedures, her claim fails.[4]

---

[4]This fact distinguishes this case from *DeBoer v. Musashi Auto Parts, Inc.*, 124 Fed. App'x 387, 393 (6th Cir. 2005), in which this court found that the plaintiff "offered perhaps the minimal amount of circumstantial evidence of pretext needed to survive summary judgment." In *DeBoer*, the court found that the "combination of the suspicious timing of [plaintiff's] demotion, the suspicious timing of [her employer's] negative reaction to [the plaintiff's] allegedly poor supervisory skills, [the employer's] decision not to counsel [the plaintiff] before demoting her, . . . and the incongruity of the request for a morale boost resulting in [the employer's] main justification for [the plaintiff's] demotion sufficiently demonstrates pretext so that summary judgment in [the employer's] favor is precluded." *Id*. at 395. Here, in contrast, Campbell presents the court with no evidence that the

**CONCLUSION**

For these reasons, the magistrate judge properly granted summary judgment against

Campbell and we affirm.

---

Library failed to follow normal procedures.