**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0367n.06
Filed: June 24, 2008

**No. 06-2619**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| RISA BILAK-THOMPSON, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) On Appeal from the United States |
| v. | ) District Court for the Eastern |
| | ) District of Michigan |
| DOLLAR TREE STORES, INC., | ) |
| | ) |
| Defendant-Appellee. | ) |

Before:        BOGGS, Chief Judge; and MARTIN and SILER, Circuit Judges.

BOGGS, Chief Judge:  Risa Bilak-Thompson sued her former employer, Dollar Tree Stores, under Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MICH. COMP. LAWS § 37.2101 *et seq.*, alleging that she had been fired because she was pregnant.  The district court granted summary judgment in favor of Dollar Tree, holding that, even if Bilak-Thompson had established a prima facie case of pregnancy discrimination, she had failed to show that Dollar Tree's proffered non-discriminatory reason for terminating her—violating the company's payroll and timekeeping policies—was mere pretext.  We affirm.

I

1

Risa Bilak-Thompson was manager of a Dollar Tree store in Dearborn, Michigan from 2001 until her termination on December 22, 2004. Approximately two months before she was fired, in October 2004, Bilak-Thompson informed her immediate supervisor, District Manager Cheri Noble, that she was pregnant. She also presented a doctor's note that stated that she should "lighten [her] load some."

In early November, Noble met with Bilak-Thompson to discuss problems with the store's timekeeping and payroll practices. Bilak-Thompson does not recall this meeting, but does not deny that it took place. At any rate, Bilak-Thompson admits that the store had a spotty track record of compliance with Dollar Tree's timekeeping policies. Appellant's Br. at 2-3. She testified at deposition that her employees would frequently neglect to clock in and out properly for work and for breaks using the company's computerized timekeeping system. Specifically, Bilak-Thompson recalled that, while employees of her store were supposed to fill out and initial a paper "time clock worksheet" whenever they needed to correct erroneous time entries on the computerized system, "[v]ery rarely did it ever happen." She testified, "I would check for time clock worksheets. If they were ever filled out, they were filled out very sparingly." Indeed, in October (the same month she informed Noble she was pregnant), she called a mandatory meeting to discuss the issue with her store employees because "the time clock edits were so horrible." As store manager, Bilak-Thompson was responsible for ensuring that payroll was submitted for processing by 9:30 a.m. on Monday. Her employees' failures to account for their time properly made it difficult for Bilak-Thompson to submit payroll by the deadline. At the deposition, she essentially admitted to violating company policy by processing payroll without all the required documentation:

Q:  If an employee did not clock in or out . . . how would that problem be fixed?

A:  They were supposed to fill out a time clock worksheet, but inevitably if they did not fill one out and the error had to be corrected, if no one else corrected it, come Monday morning when I had to finalize payroll by 9:30 or be terminated, *I would have to correct the issue*. There would be no other way for me to finalize.

. . .

Q:  And if you could not find any time clock worksheets, what would you do?

A:  [W]e would always call the associate if we could get ahold [*sic*] of them. . . . If not, I would have to go by what is on the schedule . . . . If Monday morning came and there was no time clock report, but I had to process that, *I would have to figure it out mainly myself*.

. . .

Q:  Do you recall . . . telling [your employees] that they needed to sign in and out, and that they needed proper documentation in order to get paid for all time worked?

A:  Yes, I had several meetings on that.

Q:  And did you understand that proper documentation at that time meant that the employee had to initial any time edits on the time clock worksheet?

A:  If they filled them out.

Q:  And if they didn't fill them [out], what?

A:  We tracked them down like a dog to get them to fill them out before 9:30 Monday.

Q:  And if they weren't filled out by 9:30 Monday, what?

A:  Payroll had to be approved. The only way payroll could be approved was to pay them for their time worked. . . . Come Monday morning at 9:30, if there was no time clock worksheets presented to me, *I went by what they were scheduled on the schedule*, because all associates had to be paid for all time worked.

J.A. 73-75, 91-92 (emphasis added). Bilak-Thompson understood that Dollar Tree had a "zero

tolerance policy" for editing employees' time without proper documentation—i.e., changing the

3

hours for which an employee would be paid without an employee-initialed time clock worksheet—and that "Dollar Tree required 100 percent compliance with its policies." Nevertheless, she characterized this policy as a "catch-21" [*sic*]: "I either did my job and finalized and approved payroll by 9:30, or I left everyone unpaid and did not finalize payroll by 9:30 Monday morning." Bilak-Thompson also admitted that she failed to follow company policy requiring timekeeping errors to be corrected on a daily basis, which failure she attributed to her employees' intractability. Regardless of whoever was more to blame for the store's payroll difficulties, Bilak-Thompson acknowledged that, as manager, she was "solely responsible for making sure all timekeeping errors were corrected by the time payroll was due at 9:30 am each Monday."

For her part, Noble "was concerned that [Bilak-Thompson] was not complying with Dollar Tree's policies on timekeeping and payroll, and in particular the editing of time records," and so reported her concerns to upper management. Dollar Tree's Compliance Manager, Patricia Doss, conducted an audit of the store's timekeeping and payroll entries for a two-week period in November 2004. That audit concluded that most of the store's associates "had anomalies or irregularities in time entry and time entries appeared to have been done by someone other than the timekeeping associate." Doss concluded that five associates had been underpaid, though two of these associates (both of whom were related to Bilak-Thompson) denied in affidavits having been shorted any pay. Noble reported the results of her investigation and Doss's audit to her superiors and requested guidance. Noble stated in her affidavit that upper management instructed her to terminate Bilak-Thompson's employment, which she did on

4

December 22, 2004. Bilak-Thompson was replaced by a woman who was (apparently) not pregnant.[1]

In July 2005, Bilak-Thompson filed a one-count complaint against Dollar Tree Stores in Wayne County Circuit Court, alleging that her firing violated Michigan's Elliott-Larsen Civil Rights Act (ELCRA). The case was removed to federal district court on diversity grounds (Dollar Tree Stores is incorporated in Virginia), and Dollar Tree moved for summary judgment. Bilak-Thompson then supplemented her deposition testimony by filing an affidavit in which she stated, "I did not violate company policies and practices regarding editing associates['] time clock work sheets. I deny improperly editing any of the store associates['] time keeping records in November, 2004. All store associates were paid for all time actually worked in November, 2004."

The district court granted Dollar Tree's motion for summary judgment. *Bilak-Thompson v. Dollar Tree Stores, Inc.*, No. 05-CV-73195, 2006 WL 3313790 (E.D. Mich. Nov. 15, 2006). The court offered two alternative bases for so holding: (1) Bilak-Thompson had failed to establish a prima facie case of discrimination under Michigan law, and (2) even if she had, Dollar Tree had successfully rebutted the presumption of discrimination by giving a legitimate, non-discriminatory reason for her termination, which reason Bilak-Thompson had failed to show was mere pretext for discrimination. *Id.* at *5-8.

---

[1] The only evidence Bilak-Thompson offers that her replacement was not pregnant is an affidavit from an employee who stayed on at the store after Bilak-Thompson was replaced. The employee claims that the new store manager "had previously been on maternity leave as a result of giving birth . . . several months earlier" and that she was not pregnant when she replaced Bilak-Thompson. Dollar Tree argues that this affidavit is not admissible evidence because it is not based on personal knowledge as required by Federal Rule of Evidence 56(c). Because it makes no difference to the outcome, we will assume *arguendo* that Bilak-Thompson's replacement was not pregnant at the time she assumed the store manager position.

As to its first reason, the court examined relevant state case law on the topic of pregnancy discrimination, and concluded that "summary judgment is appropriate where the only theory that a female plaintiff presents in a pregnancy discrimination claim is that she was replaced by a nonpregnant female. [Michigan case law] makes clear that . . . 'pregnant women' have not been recognized as a distinct class, separate from all women." *Id.* at *6. We express no view on the correctness of the district court's interpretation of Michigan law on this point. Rather, as explained more fully below, we affirm the district court based on its alternative holding—that Dollar Tree is entitled to summary judgment because Bilak-Thompson admitted in her deposition testimony to violating company policy regarding timekeeping and payroll practices, which violations constituted a legitimate, non-discriminatory reason for her termination. Bilak-Thompson's failure to show that this reason was pretextual is fatal to her claim.

II

This court "reviews a grant of summary judgment de novo, using the same Rule 56(c) standard as the district court." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, this court views the factual evidence and draws all reasonable inferences in favor of the non-moving party, here Bilak-Thompson. *See Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). The plaintiff, however, must present more than a mere scintilla of evidence; to survive a motion for summary judgment, "there must be evidence on which the jury could reasonably find for the plaintiff."

6

*Klepper v. First Am. Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

A

Because this case involves only a state law claim under Michigan's ELCRA, the district court was required to apply that law as it has been interpreted by the Michigan courts. *See Brocklehurst v. PPG Industries, Inc.*, 123 F.3d 890, 894 (6th Cir. 1997) ("Because [the plaintiff] filed this . . . claim pursuant to Michigan's Elliott-Larsen Act, Michigan substantive law governs this action.").[2] The ELCRA states, in relevant part, "An employer shall not . . . discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." MICH. COMP. LAWS ANN. § 37.2202 (2001). The term "'sex' includes, but is not limited to, pregnancy, childbirth, or a medical condition related to pregnancy or childbirth . . . ." *Id.* § 37.2201(d). Where, as here, there is no direct evidence of discrimination, Michigan applies the same burden-shifting analysis to claims under the ELCRA as that laid out by the Supreme Court for Title VII claims. *See Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 193 (Mich. 2003) ("In cases involving indirect or circumstantial evidence [of discrimination], a plaintiff must proceed by using the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . .").

To establish a rebuttable prima facie case of discrimination, a plaintiff must "present evidence that (1) she belongs to a protected class, (2) she suffered an adverse employment

---

[2] This court has noted, however, that the ELCRA is substantively similar to its federal counterpart—Title VII of the Civil Rights Act—and that the Michigan courts often look to federal law in adjudicating ELCRA claims. *See ibid.* ("[T]he Michigan courts look to federal law when reviewing claims of . . . discrimination under the Elliott-Larsen Act."); *DeBoer v. Musashi Auto Parts, Inc.*, 124 F. App'x 387, 391 (6th Cir. 2005) (noting that the evidence required to establish a prima facie case under Title VII will suffice to establish a prima facie case under the ELCRA).

7

action, (3) she was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination." *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 521 (Mich. 2001) (citing *McDonnell Douglas*, 411 U.S. at 802). Once a prima facie case is made, the "defendant may rebut the presumption [of unlawful discrimination] by articulating a legitimate, nondiscriminatory reason for the employment decision." *Sniecinski*, 666 N.W.2d at 193-94. If the defendant does so, the burden then shifts back to the plaintiff to establish that the defendant's proffered reason is "pretext for unlawful discrimination." *Hazle*, 628 N.W.2d at 522 (internal quotation omitted).

As noted earlier, we will assume, without deciding, that Bilak-Thompson established a prima facie case of pregnancy discrimination. We further agree with the district court that Dollar Tree proffered a legitimate, non-discriminatory reason for her termination—violating company policy by making changes to payroll without proper documentation and failing to correct payroll errors on a daily basis. The question remaining, then, is whether Bilak-Thompson met her burden of raising a genuine issue of material fact as to whether this proffered reason was a pretext.

B

Under Michigan law, a plaintiff may establish that an employer's proffered reason is mere pretext by showing "(1) . . . that the reason(s) had no basis in fact, (2) if the reason(s) had a basis in fact, . . . that they were not actual factors motivating the decision, or (3) if the reason(s) were motivating factors, . . . that they were jointly insufficient to justify the decision." *Meagher v. Wayne State Univ.*, 565 N.W.2d 401, 411 (Mich. Ct. App. 1997); *see also Smith v. Mosaica Educ., Inc.*, 2007 WL 677755, at *5 (Mich. Ct. App. Mar. 6, 2007) (pretext established "by showing that the employer's proffered explanation is unworthy of credence") (quoting *Reeves v.*

8

*Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000)); *Staunch v. Continental Airlines*, 511 F.3d 625, 631 (6th Cir. 2008) (pretext in Title VII case may be demonstrated by showing that "proffered reasons (1) have no basis in fact; (2) did not actually motive the action; or (3) were insufficient to warrant the action"). Bilak-Thompson relies on the first of these methods to show pretext—that the reasons given by Dollar Tree have no basis in fact.

In support of her argument, Bilak-Thompson attempts to draw a fine distinction between that to which she admitted in her deposition, "correct[ing] time cards to reflect the actual time worked by the associates," and that for which she was fired, "falsif[ying] time cards [such] that associates were not paid for time worked." Appellant's Br. at 11. She admits to the former, but steadfastly maintains that she never did—nor admitted to—the latter. But contrary to Bilak-Thompson's assertion that she was not fired "simply . . . for not following time card policies," *ibid.*, a failure to adhere to company policy unquestionably formed at least part of the reason Dollar Tree fired her.[3] The record shows that the company accused Bilak-Thompson of having "failed to obtain the proper documentation before editing the time records of her store associates" and having "failed to correct the errors in her store employees' timekeeping entries on a daily basis." Bilak-Thompson admitted to both of these failures, and both were violations of company policy.[4]

---

[3] Bilak-Thompson points to her termination notice as evidence that she was not fired simply for failing to adhere to company policies, but specifically for falsifying documents. Indeed, Noble did check a box on the termination notice that indicated that Bilak-Thompson was being fired for "falsifying records/reports," but Noble also specified (in the "details" section of that form) that this was in relation to Bilak-Thompson's "edit[ing] time cards." J.A. 204. Ultimately, we think that this distinction—between falsifying records and failing to adhere to company policy more generally—is largely one of semantics and not particularly significant.

[4] Bilak-Thompson's contradictory affidavit is of no consequence, and was properly ignored by the district court. *See Penny v. United Parcel Service*, 128 F.3d 408, 415 (6th Cir. 1997) ("We do not consider [plaintiff's] affidavit . . . because a party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony.").

Bilak-Thompson attempts to explain the lack of documentation by blaming her employees, noting that—despite her best efforts—they almost never filled out the time clock worksheets, and that she thus had no choice but to process payroll without the requisite documentation. But whether Bilak-Thompson, as store manager, could properly be held to account for her employees' failures is not for us to decide. It is enough that the company's cited reason for firing Bilak-Thompson can hardly be said to have had "no basis in fact" when she admitted to the very violations for which she was (at least in part) terminated. This is especially so where Bilak-Thompson "understood that Dollar Tree had a zero tolerance policy for editing time cards without proper documentation." J.A. 168 (Dollar Tree's Statement of Material Facts Not in Dispute), 280 (Bilak-Thompson's corresponding admission). It is ultimately irrelevant, then, whether any of her actions actually resulted in employees being short-changed pay; the company was well within its rights to terminate her simply for not following its timekeeping and payroll policies.

Perhaps if Bilak-Thompson could show that a non-pregnant store manager who engaged in similar violations of company policy was not disciplined, we might reach a different conclusion. *See Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004) (pretext may be shown through "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff") (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). In fact, Bilak-Thompson makes an effort along these lines, arguing that her male assistant manager engaged in similar timecard violations but was not terminated. But Bilak-Thompson's own affidavit states that her assistant manager quit on November 12, 2004, nearly a week before Noble requested the audit of

10

Bilak-Thompson's store and about six weeks before Bilak-Thompson was terminated. There is no indication or even an allegation as to what would have happened to the assistant manager if he had not quit. Moreover, as a subordinate employee, it is doubtful whether he and Bilak-Thompson were even similarly situated. *See Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 479 (6th Cir. 2003) ("[A] plaintiff must 'prove that all of the relevant aspects of his employment situation were 'nearly identical' to those of [the non-protected individual's] employment situation.'") (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)).

As store manager, Bilak-Thompson acknowledged that she was ultimately responsible for ensuring that timekeeping and payroll were handled properly. She failed. Consequently, justly or unjustly, she was terminated. Even when viewing the facts in the light most favorable to Bilak-Thompson, there is simply no evidence that her pregnancy had anything to do with the company's decision. She has failed to present any affirmative evidence that Dollar Tree's explanation for her termination either had "no basis in fact," *Meagher*, 565 N.W.2d at 411, or was otherwise "unworthy of credence," *Smith*, 2007 WL 677755, at *5. Without such evidence of pretext, there is no genuine issue of material fact that would allow her claim to proceed to trial, and summary judgment was appropriate.


III

The decision of the district court is therefore AFFIRMED.


11