**NOT RECOMMENDED FOR PUBLICATION**
File Name: 12a0051n.06

No. 10-6185

**FILED**

**Jan 13, 2012**

LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| John Randall Roll, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Bowling Green Metalforming, LLC, | ) | WESTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:     Merritt and Cole, Circuit Judges; Varlan, District Judge.[*]

**MERRITT, Circuit Judge.** Plaintiff Randall Roll appeals the district court's order granting summary judgment to his former employer, defendant Bowling Green Metalforming, after plaintiff filed this action against defendant under the Family Medical Leave Act, 29 U.S.C. § 2615. Plaintiff alleges that defendant violated the Act when it terminated his employment on the day he returned from taking leave pursuant to the Act for an injury. Defendant contends that plaintiff was terminated as part of a large reduction in force in January 2009, precipitated by the downturn in the United States auto industry, not because he had taken leave under the Act. We agree with the district court that defendant is entitled to summary judgment because plaintiff has not raised a genuine issue of

---

[*]The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

material fact demonstrating that defendant's stated reason for terminating plaintiff—a reduction in force at the company—was pretextual.

**I.**

Defendant is an automotive supplier with a manufacturing plant in Bowling Green, Kentucky. Plaintiff was hired by defendant in 2004 to work as a Maintenance Technician. Plaintiff was promoted to Maintenance team leader in 2005, where he supervised between 8 and 16 Maintenance Technicians. In 2007, plaintiff received written counseling on two separate occasions for attendance issues. On July 23, 2007, plaintiff received a written performance review that rated him in 10 categories. The rating scale was 1-5, with "1" being the worst and "5" being the best. He received six "2s" and four "3s," and he was put on a Performance Improvement Plan with which he disagreed and refused to sign. In November 2007, plaintiff was suspended for two days for operating a maintenance cart in a reckless manner. After the suspension, plaintiff voluntarily moved back to the Maintenance Technician position.

Plaintiff severely injured his hand in an accident at home in early September 2008, and took leave under the Act. Plaintiff's doctor stated that the necessary leave time was undetermined, but plaintiff hoped at that time to only miss one week of work. Complications arose from the injury and plaintiff was unable to return to work until February 2, 2009. Plaintiff took the 12 weeks of annual leave allowed by the Act in 2008 and was allowed by defendant to take another five weeks of leave in 2008. Plaintiff accrued 12 more weeks of annual leave under the Act on January 1, 2009, and he took another four or five weeks in early 2009.

While plaintiff was on leave, defendant started to suffer the effects of the financial crisis. On November 28, 2008, defendant's parent corporation announced layoffs in the United States and Canada. Plaintiff received this information in a letter while on leave. Defendant instituted a significant reduction in force in January 2009, laying off 400 people. Plaintiff's department laid off 72 of 132 employees, about 60% of the department work force. Of the 65 people who remained employed in plaintiff's department, 20 had previously taken leave under the Act. Of the 77 people laid off, 62 had never taken leave under the Act.

Defendant allowed plaintiff to remain on leave rather than terminating him when the rest of the employees were let go in January so that plaintiff could get the full benefit of his leave. While on leave plaintiff was receiving 60% of his salary and health benefits. Plaintiff was laid off on February 2, 2009, the day he returned from leave. He filed this action in state court and it was removed to federal court. In his complaint, plaintiff alleges that defendant violated the Act by terminating him in retaliation for taking leave under the Act and by failing to reinstate him to the same or a similar job upon his return from leave. Defendant moved for summary judgment and the district court granted its motion. Plaintiff then moved to set aside, vacate, alter or amend the summary judgment order pursuant to Federal Rule of Civil Procedure 59(e), which motion was denied. Plaintiff timely appeals.

## II.

The Family Medical Leave Act provides two types of claims or theories of liability: (1) the "interference" theory, which provides for liability if an employer interferes with a right to medical leave or reinstatement created by the Act, 29 U.S.C. § 2615(a)(1), or (2) a "discrimination" or

"retaliation" theory, which prohibits an employer from discriminating or retaliating against an employee for taking leave under the Act, 29 U.S.C. § 2615(a)(2).[1] Plaintiff brought his claim under the "retaliation" theory, arguing that he was retaliated against when he was terminated on his first day back to work after taking leave under the Act.

To establish a prima facie case of retaliation in the absence of direct evidence, we look to the burden-shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-06 (1973). Plaintiff must first demonstrate that: (1) he was engaged in an activity protected by the Act; (2) he suffered an adverse employment action; and (3) there was a causal connection between his protected activity and the adverse employment action. If plaintiff makes a prima facie showing, the burden shifts to defendant to demonstrate evidence of a legitimate, nondiscriminatory reason for the adverse

---

[1]29 U.S.C. § 2615 of the Act provides, in relevant part:

(a) Interference with rights
 (1) Exercise of rights

It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

 (2) Discrimination

It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

. . . .

employment action. *See Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). If defendant satisfies this burden of production, the burden shifts back to plaintiff to show defendant's proffered reason is pretext for unlawful discrimination. *See id.*

We agree with the district court that plaintiff has made out a prima facie case: he was engaged in a protected activity; he was engaged in a protected activity, his termination was an adverse employment action and the close temporal proximity between his leave and termination provides the necessary causal connection at this early stage of the analysis where the burden of proof is minimal. Because plaintiff has established a prima facie case, the burden shifts to defendant to provide a nondiscriminatory reason for plaintiff's termination. Defendant did so by providing substantial documentary and testimonial evidence in the record below that plaintiff was terminated due to a reduction in force at the company. Included in the evidence is a letter from the Chairman of the Board of defendant's parent company announcing layoffs due to the financial difficulties the company was facing due to the economic downturn, which affected the automotive industry particularly hard. A declaration from the Human Resources department manager at the company testified that a reduction in force took place in January 2009, and that plaintiff was selected for the reduction based on objective criteria such as skills, performance, work history and overall ability. Plaintiff does not dispute any of the evidence showing that objective criteria were used to determine who would be laid off, nor does plaintiff challenge the statistics submitted by defendant that show that 60% of his department was laid off. The declaration stated that the layoffs took place while plaintiff was on leave, but that the company decided to permit plaintiff to remain on leave as long as needed instead of terminating him during his leave, thereby allowing him to continue to collect

60% of his salary and maintain his health benefits for a few more weeks. These are adequate reasons for the reduction in force and plaintiff's inclusion in it, including the reason for his later termination date.

Plaintiff must produce evidence to allow a reasonable jury to conclude that defendant's proferred reason—that plaintiff was legitimately included in a reduction in force, albeit at a later date than other employees—was pretextual and that the real reason he was terminated was at least partly motivated by his taking of leave under the Act. The only evidence of pretext offered by plaintiff is the timing of his termination, which occurred on the day he returned from leave. The company has adequately explained that plaintiff was not terminated while on leave so that he could continue receiving benefits. Moreover, temporal proximity between taking leave and an adverse employment action is insufficient, standing alone, to demonstrate pretext. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001).

In an attempt to present additional evidence that defendant's stated reason for terminating plaintiff was pretextual, plaintiff also argues that he was subject to discrimination by defendant when he declined to provide information to management about his coworkers' views during a union organizing campaign. In 2007, plaintiff was in a supervisory position when he received several written warnings about attendance and received a "Performance Improvement Plan" to address deficiencies in his work. Plaintiff claims that he received the Performance Improvement Plan due to his refusal to provide information about union organizing to management. Plaintiff never sought redress at the time for any alleged discrimination arising from this situation and, in any event, this evidence does not support an inference that plaintiff was terminated for taking leave under the Act

two years later. We do not view this as evidence demonstrating a discriminatory motive on the part of defendant that, when combined with the timing, demonstrates pretext. *See DeBoer v. Musashi Auto. Parts, Inc.*, 124 F. App'x 387, 393-94 (6th Cir. 2005) ("[S]uspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence.").

We also note that it is not unlawful for an employer to terminate an employee who took leave under the Act if the termination would have occurred regardless of the employee's exercise of his rights under the Act. The Department of Labor's regulation concerning the Act states:

> (a) An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment. For example:
>
> (1) If an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave, maintain group health plan benefits and restore the employee cease at the time the employee is laid off, provided the employer has no continuing obligations under a collective bargaining agreement or otherwise. An employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration.

29 C.F.R. § 825.216(a)(1). Under this regulation, defendant could have terminated plaintiff along with the other employees in January 2009, but instead allowed him to continue on leave with benefits until February 2, 2009. As explained above, defendant has met its burden of showing that plaintiff would have been terminated under the reduction in force without regard to his taking of leave under the Act and no genuine issue of material fact remains to warrant a trial.

For the foregoing reasons, we affirm the judgment of the district court.