Tara WOLF, Plaintiff

v.

ANTONIO SOFO & SON IMPORTING CO., Defendant.

Case No. 3:09CV2744.

United States District Court,
N.D. Ohio,
Western Division.

Oct. 19, 2012.

Joseph F. Albrechta, Albrechta & Coble, Fremont, OH, John A. Coble, Albrechta & Coble, Toledo, OH, for Plaintiff.

Kimberly A. Conklin, Kerger & Hartman, Zachary M. Clark, Christopher E. Hohenberger, Niehaus & Associates, Toledo, OH, for Defendant.

## ORDER

JAMES G. CARR, Senior District Judge.

This is an employment discrimination case in which plaintiff Tara Wolf claims defendant Antonio Sofo & Son Importing Co. (Sofo) terminated her employment because she became pregnant and requested maternity leave under the Family and Medical Leave Act (FMLA). Wolf claims pregnancy discrimination, FMLA interference, and FMLA retaliatory discharge.

Pending is Sofo's motion for summary judgment (Doc. 41). For the reasons that follow, I grant Sofo's motion.

Jurisdiction exists under 28 U.S.C. § 1331.

### Background

Sofo is a Toledo-based ethnic food distributor. Wolf began working for Sofo as an account manager on December 6, 2004. Sofo assigns each account manager one or more sales "territories" and expects the manager to generate business by visiting existing clients and contacting potential customers. Sofo initially assigned Wolf two territories in Ohio.

At hiring, Sofo informed Wolf of its expectations regarding her performance as an account manager. Sofo primarily evaluates an account manager's performance based on the number of cases of food sold (case sales). Because case sales naturally fluctuate throughout the year, Sofo compares each month's sales with the same month from the previous year. Although Sofo considers gross profits important, because case prices fluctuate with the market, a manager's total case sales is, in Sofo's view, the best way to gauge whether the manager has attained actual growth.

Sofo told Wolf that each account manager must open ten new customer accounts each year, and each of those accounts must generate at least $1,000 in weekly sales. Sofo also requires each account manager to conduct "kitchen cuttings," during which the manager introduces new Sofo products to an existing customer. Additionally, the account manager must file daily output records, known as "CPDs."

Sofo initially paid Wolf $600 weekly. After Wolf completed a ninety-day probationary period, she negotiated a pay increase to $700 weekly.

Wolf received her first performance review in 2005. Wolf met with her immediate supervisor, Judith Williams, and Jeffrey Peer, Williams' direct supervisor. Because Wolf had not completed a full fiscal year of employment, Williams and Peer primarily discussed Wolf's sales techniques and her completion of CPDs. Williams told Wolf she needed to increase her kitchen cuttings and more consistently complete her CPDs. However, Williams rated Wolf high on personality traits such as knowledge, output, accuracy, judgment, innovation, orderliness, and courtesy.

On May 5, 2006, Wolf requested, and Sofo granted her, twelve weeks of maternity leave. Wolf returned to work without incident in November 2006.

Wolf failed to meet Sofo's expectations during her first full fiscal year, 2005–2006. Wolf failed to generate new business, perform the required number of kitchen cuttings, or complete her CPDs. However, because she took maternity leave toward the end of the fiscal year, Williams did not conduct an official review of Wolf's performance for that year.

Instead, Williams again met with Wolf informally to discuss her performance. Williams told Wolf that she was not adequately controlling the prices at which she

sold cases of food to customers. Because Wolf's sales numbers had dropped, but her gross profits increased, Williams knew that Wolf was over-charging in her territories. During that time, Wolf had unfettered access to Sofo's pricing information for all her customers, and could decrease prices to as low as five percent above cost.

On August 22, 2007, Williams provided Peer with an evaluation of Sofo's account managers. Williams advised Peer as to whether she believed Sofo should terminate or keep each account manager. Williams indicated, at that time, Wolf remained a "keeper."

On September 25, 2007, Williams and Peer reviewed Wolf's performance for the 2006–2007 fiscal year. Wolf acknowledged her case sales had decreased and she failed to open any new customer accounts or conduct any kitchen cuttings in the prior year. Williams designated Wolf a "non-contributor" in these categories, and Peer reduced Wolf's pay by ten dollars weekly. However, Williams again ranked Wolf well above satisfactory regarding her personality traits.

After her performance review, Williams assigned Wolf an additional territory to help her increase her sales and open new accounts. Wolf testified she considered the new assignment a promotion.

In early October 2007, Williams accompanied Wolf on a customer visit. During the trip, Wolf told Williams she was pregnant with her second child. Wolf's announcement was followed by "awkward silence." Williams had congratulated her when she announced her previous pregnancy. This time, however, Williams merely asked Wolf when she was due to give birth. Wolf asked Williams to tell Peer, because she was concerned about how he would react. Williams told Wolf it was not a good time to tell Peer. After Wolf told Williams about her pregnancy, Williams became uncooperative and short with her.

Between her last performance review and January 2008, Wolf had failed to open any new accounts or conduct any kitchen cuttings.

Wolf requested maternity leave in February 2008. Sofo employees submit FMLA requests directly to Sofo's human resources department. Thus, Wolf's supervisors, Williams and Peer, did not directly handle her FMLA request.

Wolf provided Sofo the necessary FMLA documentation from her doctor. Sofo has failed to provide a copy of the "Response to Employee Request for Family and Medical Leave Act" form that it typically provides employees following an FMLA request. However, Sofo has provided an email chain in which Wolf wrote, "I will need the Family Leave Act paperwork for my upcoming maternity leave. If you could put in my mail for next Fridays [sic] meeting I will take care of getting it to my Dr." A human resources employee responded, "Not a problem. I just need to know an approximate date of when you[r] leave will start." The employee testified that Sofo approved Wolf's FMLA request.

In late March 2008, Williams provided Wolf notice that, if she did not improve her performance within thirty days, Sofo would terminate her employment. Williams required Wolf to increase case sales for April and meet her goals regarding kitchen cuttings and customer calls. Wolf failed to meet these requirements, and Sofo terminated her on April 30, 2008.

Williams summarized the reasons for Wolf's termination:

> For more than two years, Wolf failed to show case growth in her territories, failed to conduct kitchen cuttings, failed to open new accounts[,] and failed ·to complete her daily CPD reports. She

demonstrated poor communication skills. She failed to track her customers and allowed the competition to come into her territory and take her business.

After taking the necessary administrative action, Wolf filed this lawsuit.

## Standard of Review

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party must provide the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(e).

After the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some evidentiary material in support of its position. *Celotex, supra,* 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the non-moving party's evidence will be accepted as true and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be granted if the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

## Discussion

### 1. Pregnancy Discrimination

■ Title VII prohibits employers from discriminating against employees on the basis of pregnancy. 42 U.S.C. § 2000e–2(a)(1); 42 U.S.C. § 2000e(k); *Boyd v. Harding Academy of Memphis, Inc.,* 88 F.3d 410, 413 (6th Cir.1996) ("Congress manifested its belief that discrimination based on pregnancy constitutes discrimination based on sex."). Courts analyze claims of discrimination based on pregnancy under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 793, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Asmo v. Keane, Inc.,* 471 F.3d 588, 592 (6th Cir. 2006).

■ Under this framework, the employee must first establish a *prima facie* case of discrimination. *Asmo, supra,* 471 F.3d at 592. If the employee succeeds, "the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for its adverse employment decision." *Id.* "If the employer is able to do so, the burden shifts back to the employee, who, to defeat a motion for summary judgment, must show that the employer's articulated reason was a pretext for intentional discrimination." *Id.*

### a. *Prima Facie* Case

■ To establish a *prima facie* case of pregnancy discrimination, a plaintiff must show that: 1) she was pregnant; 2) she was qualified for her job; 3) she suffered an adverse employment action; and 4) a

nexus exists between her pregnancy and the adverse employment decision. *Asmo, supra,* 471 F.3d at 592; *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 657–658 (6th Cir.2000). Sofo concedes Wolf met the first and third elements, but argues she failed to establish the second and fourth elements.

■ A plaintiff's burden in establishing a *prima facie* case is not onerous; indeed the *prima facie* requirement "poses a burden easily met." *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987). The *prima facie* case requirement "merely serves to raise a rebuttable presumption of discrimination by 'eliminat[ing] the most common nondiscriminatory reasons for the [employer's treatment of the plaintiff].'" *Hollins v. Atlantic Co.,* 188 F.3d 652, 659 (6th Cir.1999) (quoting *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253–254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). This stage is not meant to stymie plaintiffs, but merely to "bring the litigants and the court expeditiously and fairly to the ultimate question." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089.

Sofo first argues Wolf failed to establish she was qualified for her job. I disagree.

■ A plaintiff may show that she is qualified for her job by showing she was performing "at a level which met [her] employer's legitimate expectations." *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1160 (6th Cir.1990). However, a court must "evaluate whether a plaintiff established [her] qualifications independent of the employer's proffered nondiscriminatory reasons for discharge." *Cicero v. Borg–Warner Auto., Inc.,* 280 F.3d 579, 585 (6th Cir.2002); *see also Cline, supra,* 206 F.3d at 660–661. "Instead of using the discharge justification to judge whether [the employee] was qualified at the prima facie stage, the [c]ourt should only consider the employer's proffered reason in the later stages of the *McDon-*

*nell Douglas* analysis." *Cicero, supra,* 280 F.3d at 585.

■ At this stage, I must evaluate the plaintiff's objective qualifications to determine whether she was qualified for the relevant job. *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 575–576 (6th Cir.2003). A plaintiff can demonstrate she was qualified by presenting credible evidence that her qualifications remain "at least equivalent to the minimum objective criteria required for employment in the relevant field." *Id.* Specifically, the court should look to the plaintiff's "education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.*

As discussed below, Sofo asserts it terminated Wolf because she failed to perform adequately as an account manager. Specifically, Sofo states Wolf failed to increase her year-to-year case sales, conduct the required kitchen cuttings, open new customer accounts, and complete her CPDs. I will not, therefore, consider these allegations when determining whether Wolf was qualified for her job and meeting Sofo's legitimate expectations.

■ Wolf provided credible evidence establishing that she was qualified for her job. Wolf attained education in both business and communications, fields highly pertinent to her sales position with Sofo. Before joining Sofo, Wolf worked with several other companies in sales positions. Most notably, she worked for a Sofo competitor, Gordon Food Services.

After joining Sofo, it provided Wolf with training specifically tailored to her position, and designated her a "certified product specialist." In addition, Williams rated Wolf above satisfactory in all personality traits relevant to her position as an account manager. Wolf thus established she met the requisite minimum criteria for em-

ployment in the field and was qualified for her job as an account manager with Sofo.

Sofo also argues Wolf failed to establish a nexus between her pregnancy and termination. I disagree.

Wolf primarily relies on Williams' silence and comments immediately following her announcement as proof of a nexus between her pregnancy and termination. Wolf also relies on Sofo's failure to approve formally her FMLA leave request, the temporal proximity of her pregnancy and termination, and alleges that Sofo did not terminate other similarly situated, non-pregnant employees. She argues this evidence demonstrates a sufficient nexus between her pregnancy and termination.

Wolf's evidence, when considered together, established a sufficient nexus between her pregnancy and termination to establish a *prima facie* case. Wolf testified she told Williams she was pregnant, and immediately encountered an "awkward silence." Williams then told her, "now is not a good time to tell Jeff Peer and [I will] decide when it [is] time to tell him."

This testimony strongly supports Wolf's *prima facie* case. Because "[p]regnancies are usually met with congratulatory words, even in professional settings[,]" a supervisor's failure to congratulate an employee supports an inference of pregnancy discrimination. *Asmo, supra,* 471 F.3d at 594. Williams attempted to explain the reason for her behavior, stating she did not react because she was on a sales call and concentrating on Wolf's continued struggles as an account manager. Williams explained it was not a good time to tell Peer about Wolf's pregnancy because he was busy in meetings. Although Williams' reaction remains open to alternative, non-discriminatory interpretations, in the context of summary judgment, I must resolve this issue in Wolf's favor. *Id.* at 595.

Wolf also supports her *prima facie* case by showing Sofo failed to approve formally her FMLA request. Sofo concedes that it normally approves FMLA requests and provides the requesting employee with a standard approval response. Here, however, Sofo has failed to produce proof it gave Wolf notice of approval for her second pregnancy.

To be sure, Sofo has provided some evidence that it informally approved Wolf's request. But I have to construe the evidence in the light most favorable to Wolf. When I do so, I conclude that Sofo's failure to provide Wolf with its standard response when she requested FMLA leave supports her argument that there was a connection between her pregnancy and termination.

■ Wolf next points to the temporal proximity of her pregnancy announcement and discharge in supporting her *prima facie* case. Sofo terminated Wolf about seven months after she announced her pregnancy. Although cases relying on temporal proximity usually involve "short periods of time, usually less than six months[,]" when coupled with other evidence, courts may consider longer time periods sufficiently proximate to support an inference of discrimination. *Nguyen v. City of Cleveland,* 229 F.3d 559, 566–567 (6th Cir.2000); *Harrison v. Metropolitan Government of Nashville,* 80 F.3d 1107, 1119 (6th Cir.1996) (temporal proximity of one year and three months between EEOC charge and termination, when coupled with other evidence, supported *prima facie* case of retaliation). The temporal proximity of Wolf's pregnancy and termination therefore supports her *prima facie* case.

I conclude that, considered together, Wolf's evidence sufficiently established a nexus between her pregnancy and termination to establish her *prima facie* case.

However, I reject Wolf's assertion that Sofo treated similarly situated non-pregnant employees better.[1] To establish discrimination based on the more favorable treatment of comparable employees, the plaintiff must show the she is similarly-situated to those employees "in all respects." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992). The plaintiff must compare herself to employees "subject to the same standards and [who] have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (internal citations and quotations omitted).

Wolf failed to establish she was similarly situated to the two employees with whom she seeks to compare herself. Wolf points to two Sofo account managers who also struggled with sales but whom Williams and Peer did not terminate. Williams discussed performance problems with these account managers. In the following months, their sales decreased more than Wolf's, which, Wolf's expert testified, showed that Wolf had better sales. However, Wolf has failed to establish that these account managers were similarly situated to her. Specifically, Wolf failed to establish their year-to-year case sales, the number of new accounts they opened, and the number of kitchen cuttings they performed. Differences in case sales, though important in Sofo's evaluation of its employees and treatment of Wolf, is not, standing alone, sufficient to create a triable issue as to differential treatment.

Additionally, Wolf failed to compare properly herself to the other account managers. Sofo compares each manager's monthly case sales to the same month of the previous year. Wolf's expert compared case sales from consecutive months.

Wolf's expert's opinion, therefore, does not show she out-performed these managers.

Wolf has, therefore, failed to prove she is similarly situated with these account managers or that Sofo afforded them preferential treatment. Nonetheless, for purposes of this opinion, I deem Wolf to have met her initial burden.

### b. Pretext

Wolf does not contend that Sofo failed to meet its burden of articulating legitimate, nondiscrimnatory reasons for its decision. The determinative issue is, accordingly, whether Wolf has created a genuine issue of material fact with regard to whether those were Sofo's true reasons or simply a pretext masking discriminatory motive. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Absent direct evidence of discrimination, a plaintiff may establish pretext in three separate ways. *DeBoer v. Musashi Auto Parts, Inc.*, 124 Fed.Appx. 387, 393 (6th Cir.2005). A plaintiff must show either:

> (1) that the proffered reasons had no basis *in fact,* (2) that the proffered reasons did not *actually* motivate [her] discharge, or (3) that they were *insufficient* to motivate discharge.

*DeBoer, supra,* 124 Fed.Appx. at 393 (quoting *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1084 (6th Cir.1994) (overruled on other grounds, *Geiger v. Tower Automotive,* 579 F.3d 614 (6th Cir.2009) (emphasis in original))).

In the Sixth Circuit, "to make this type of rebuttal showing, the plaintiff may not rely simply upon his *prima facie* evidence but must, instead, introduce additional evidence of [ ] discrimination." *Manzer,* 29

---

1. Although Wolf established her *prima facie* case without this evidence, I decide this issue because it remains relevant to the strength of her *prima facie* case and can be considered either at this stage or the third, pretext stage of the *McDonnell Douglas* framework.

F.3d at 1084. Wolf has provided a lengthy list of alleged factual issues that, she contends, could cause a rational trier of fact to find for her on the issue of pretext. I will address each of these.

### i. Sofo's Expectations

Sofo provided evidence that Wolf failed to meet its expectations for more than two years before her termination. Specifically, Wolf failed to increase her yearly case sales, conduct required kitchen cuttings, open new customer accounts, or regularly file her CPDs.

Wolf first attempts to show this reason is pretextual by pointing to two performance evaluations in which Williams rated her above satisfactory in personality traits relevant to her job. She also asserts that Williams promoted her by assigning her a new territory and described her as a "keeper." Finally, Wolf stated that, while with Sofo, she opened twenty-nine new accounts, conducted six kitchen cuttings, and substantially improved her CPD reporting.

Wolf's performance evaluations do not show that she adequately performed her job. Williams rated Wolf high on personality traits, perhaps demonstrating Wolf had the ability to do her job. However, her numbers regarding sales, new accounts, and kitchen cuttings demonstrate she failed actually to do so. This is consistent with other evidence showing Wolf often failed to provide adequate customer contact and was frequently preoccupied, during working hours, caring for her first child.

The parties dispute whether Wolf's assignment to a new territory was a promotion or a last-ditch effort to help her improve her sales record. However, even construed in Wolf's favor, this fact does not tend to disprove her under-performance. At best, it shows Sofo's continued willingness to work with Wolf despite that performance.

When read in context, Williams' statement to Peer that Wolf remained a "keeper" does not support her claim. Williams wrote to Peer telling him whether she considered six account managers "keepers or not." After evaluating whether to terminate these employees, Williams determined that Sofo should not, at that time, terminate Wolf. In fact, of the six employees Williams reviewed, she only recommended terminating one. This fact does not support Wolf's claim of pretext because it merely shows Sofo had not yet decided to terminate her. It does not, as Wolf claims, show that Williams considered her a valuable asset to the company.

Although Wolf opened twenty-nine new accounts, conducted six kitchen cuttings, and substantially improved her CPD reporting while with Sofo, this does not undermine Sofo's claim that she failed to meet its performance criteria. Sofo requires account managers to open ten new accounts each year that each produce at least $1,000 in weekly sales. Wolf acknowledged that most of her new accounts did not meet this requirement. The fact that Wolf opened twenty-nine new accounts is insufficient, because the vast majority of those accounts failed to produce the requisite sales expectations.

Likewise, Wolf's assertion that she conducted six kitchen cuttings does not prove pretext because Sofo required each account manager to conduct six *each year*. Wolf does not dispute she failed to meet this requirement.

The record shows Wolf often failed to file her CPDs, but that she improved with time. Sofo's allegation regarding the CPDs was not, therefore, factually untrue, and does not tend to prove pretext. Finally, I note that Sofo required Wolf to meet each of these requirements. It appears she failed to meet, at the very least, three

out of four. Wolf has, therefore, failed to establish this reason was pretextual.

### ii. Wolf's Wage Decrease

Wolf claims Sofo decreased her wages by $10 a week on the same day she announced her pregnancy, which shows pregnancy discrimination. However, the evidence, including Wolf's deposition testimony, shows Peer made the decision to reduce her pay before she announced her pregnancy. In fact, Peer decided to reduce Wolf's pay when he evaluated her performance in September, and Wolf did not announce her pregnancy until October. Although the reduction did not take effect until after Wolf told Williams about her pregnancy, the evidence shows Peer made the decision before Wolf's announcement. Her wage decrease, therefore, does not show pretext.

### iii. Sofo's Discipline Policy

Wolf next argues Sofo failed to follow its progressive discipline policy, and its failure to implement this policy proves pretext. When Sofo hired Wolf, it explicitly told her that she was an at-will employee, could be terminated at any time, and the employee handbook did not afford her any contractual rights. Thus, she had no right to any specific procedure before Sofo terminated her. Additionally, Wolf has failed to demonstrate that Williams, Peer, or any supervisor at Sofo actually used the progressive discipline policy before terminating any other employee. Sofo's failure to use the policy before terminating her, therefore, does not prove discrimination.

### iv. Supervisor Contact and Counseling

Wolf claims that Williams only conducted "ride-alongs" on a bi-weekly, rather than daily or weekly basis, as Sofo claimed. Wolf has failed to explain how this alleged factual discrepancy is material to the pretext inquiry. Because this minor factual discrepancy does not appear to undermine Sofo's proffered reason for Wolf's discharge, I find this point irrelevant.

Wolf also claims Williams should have met with her to discuss the management of her territories during her expected maternity leave. I reject this argument. Wolf previously took maternity leave at a time when Williams served as her supervisor. Wolf failed to present any evidence showing Williams met with Wolf to discuss her territories before she took that leave. Additionally, there is no evidence to show Sofo had any problem managing her territories during her previous absence. Wolf failed to present any evidence Williams should have believed that Sofo could not handle her territories in her absence without discussing it with her first. Sofo's failure to do so, therefore, does not tend to prove Williams planned to terminate her because of her pregnancy.

### v. Control of Case Prices

Wolf claims Williams did not allow her to adequately control her case prices. Therefore, she claims, she was not responsible for inadequately controlling pricing in her territories. Wolf, however, failed to present any evidence proving Williams restricted her ability to control her case prices on any specific occasion. Although Wolf stated vaguely that she did not have the control she desired, she never actually requested a price change or a deviation from Sofo's standard pricing. In addition, the evidence shows that account managers generally had control to change prices. Wolf has, therefore, failed to show Williams restricted her ability to control case pricing.

### vi. Loss of Customers and Poor Customer Service

Wolf argues Sofo has misrepresented facts relating to two lost customers in her territory. Wolf lost two customers, one related to pizza sales and one cheese sales. Wolf testified Sofo lost the pizza customer because a truck driver made a late delivery. Wolf claims she was not responsible

for the late delivery, and Sofo's assertion to the contrary shows pretext.

Sofo does not dispute that Wolf lost the customer or that a late delivery occurred. Rather, Sofo used this as one example in which Wolf failed to provide adequate customer service. Sofo claims, and Wolf does not dispute, that she failed to contact this customer for more than five months after the late delivery.

Likewise, after Wolf lost the cheese customer, she did not realize it for several weeks. Wolf attempted to refute this assertion by testifying that account managers often lose customers with little notice. Again, Sofo presented this example to show Wolf failed to visit the customer as Sofo requires.

Sofo provided other evidence establishing Wolf failed to provide adequate customer contact. Wolf's inside sales manager testified Wolf often stated she visited customers when she had not, did not return phone calls, and spent unacceptable amounts of time attending to personal matters during working hours. Sofo also presented emails from customers in which they complained that Wolf did not respond to their questions and concerns.

### vii. 2008 Sales Numbers

Wolf again claims account managers under Williams' supervision performed worse than her in 2008. Wolf argues that, by showing Sofo terminated her but retained the other account managers, she has established sufficient proof of pretext. As discussed above, because Sofo compares case sales by looking to the same month of consecutive years, rather than consecutive months of the same year, Wolf's comparison is irrelevant. In addition, Wolf failed to establish that she and the other account managers were similarly situated.

### 2. FMLA Interference and Retaliation

■ To establish a prima facie case of interference under the FMLA, a plaintiff must establish: 1) she was an eligible employee; 2) the defendant was an employer; 3) she was entitled to FMLA leave; 4) the defendant had notice of her intention to take leave; and 5) the defendant denied her FMLA benefits to which she was entitled. *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir.2005). Sofo only disputes the fifth element.

■ "An employee lawfully may be dismissed, preventing [her] from exercising [her] statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Arban v. W. Pub. Corp.*, 345 F.3d 390, 401 (6th Cir.2003). As discussed above, Sofo terminated Wolf because of her poor performance. Wolf was only entitled to take FMLA leave because of her pregnancy, and Wolf terminated her for legitimate reasons before she was entitled to that leave. Sofo therefore proved it would have terminated Wolf regardless of her request to take FMLA leave, and did not deny Wolf FMLA benefits to which she was entitled.

■ Courts evaluate FMLA retaliation claims under the *McDonnell Douglas* burden-shifting framework. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir.2001). Assuming Wolf could establish a *prima facie* case of retaliation, she failed to prove Sofo's reason for discharging her was pretextual. As discussed above, Sofo showed it terminated Wolf because she failed to increase case sales, open new customer accounts, and conduct kitchen cuttings. Because Wolf failed to prove pretext, this claim also fails.

### Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT Sofo's motion for summary judgment (Doc. 41) be, and the same hereby is granted.

So ordered.